IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PACKRITE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1019 |
| | ) | |
| | ) | |
| GRAPHIC PACKAGING | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

On August 29, 2018, this Court granted Defendant's partial motion to dismiss related to three of Plaintiff's claims in its original complaint ("2018 Order"). (ECF No. 19.) Specifically, this Court dismissed without prejudice Defendant's Fraudulent Misrepresentation/Inducement claim, Negligent Misrepresentation/Detrimental Reliance claim, and Unfair and Deceptive Trade Practices Act claim due to the failure of those claims to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (*Id.* at 18.) After seeking leave of this Court, Plaintiff filed an Amended Complaint on October 15, 2018. (ECF Nos. 21, 24.) Before the Court is Defendant's Partial Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, requesting that this Court dismiss four of the six claims in Plaintiff's Amended Complaint. (ECF No. 26.) For the reasons that follow, Defendant's Partial Motion to Dismiss is granted in part and denied in part.

# I.     FACTUAL BACKGROUND[1]

Packrite, LLC ("Packrite"), a North Carolina company, is a "specialized trade finisher for the corrugated and folding carton packaging industries." (ECF No. 24 ¶¶ 1, 4.) Graphic Packaging International, Inc. ("Graphic") is a Delaware company, headquartered in Atlanta, Georgia, that manufactures "folding cartons, unbleached paperboard, and coated recycled board used in packaging for the food, beverage, and consumer product industries." (*Id.* ¶¶ 2, 5.)

Beginning in or around 2012, Graphic engaged Packrite's services as an outsource vendor, on an as-needed basis, to assist with fulfilling customer orders and meeting Graphic's manufacturing needs. (*Id.* ¶¶ 8, 12.) In or around August 2016, Graphic requested Packrite's temporary assistance "in producing the packaging for Clorox Kitty Litter," (the "Clorox Business"). (*Id.* ¶ 15 (internal quotation marks omitted).) The Clorox Business "was part of a very large contract obtained by [Graphic,]" and Graphic "did not have the resources, equipment, or capacity to undertake the Clorox Business itself." (*Id.* ¶¶ 16, 17.) According to the Amended Complaint, "Packrite was initially unwilling to assist" Graphic with the Clorox Business because Packrite also lacked the necessary resources to assist on such a large project and, further, such assistance would limit Packrite's ability to pursue or obtain other business opportunities. (*Id.* ¶¶ 21, 23, 25.)

The Amended Complaint alleges that Chris Berndt, Graphic's Director of Operations, stated to Packrite that, should Packrite agree to assist Graphic with the Clorox Business,

---

[1] The Background set forth in this Court's 2018 Order has, in large part, been incorporated and restated herein except to the extent that Plaintiff's Amended Complaint, (ECF No. 24), while substantially similar to its original Complaint, (ECF No. 2), includes additional factual allegations.

Graphic would then agree to enter into a three year contract "under which Packrite would be the sole producer of [Graphic's] requirements of [b]eer [c]artons" (the "Beer Carton Project" or "Beer Carton Contract"). (*Id.* ¶ 27.) Chris Berndt "specifically and unequivocally" told Packrite that the Beer Carton Project "would result in gross revenue of approximately $10,000,000.00 per year to Packrite." (*Id.* ¶ 31.) "Based solely upon the[se] representations," Packrite agreed to assist Graphic with the Clorox Business and, in early September 2016, Packrite began its production preparations, followed by the start of actual production in November 2016. (*Id.* ¶¶ 32, 39, 41.)

Also in November 2016, shortly after Packrite began production on the Clorox Business, Packrite representatives met with Kristopher Dover, Vice President of Operations at Graphic. (*Id.* ¶ 47.) At that meeting, Mr. Dover informed Packrite that Chris Berndt "did not actually have the requisite authority to commit [Graphic] to the promised [Beer Carton Project] when he did so in August 2016." (*Id.* ¶ 48.) Nevertheless, Mr. Dover, who did have authority to commit Graphic to the Beer Carton Project, stated that Graphic "would honor Mr. Berndt's original promise" and that Graphic would complete the Beer Carton Project with Packrite, "on the same terms promised in August 2016." (*Id.* ¶ 49.)

In early 2017, Graphic provided Packrite with an initial draft of the Beer Carton Project contract, to which Packrite proposed revisions and returned to Graphic. (*Id.* ¶¶ 57, 59; *see also id.* at 27–35, 36–44.) Packrite did not receive any further "specific response from [Graphic] regarding either its proposed changes to the draft Beer Carton Contract or the omitted quantity and price terms, although the parties continued discussions and negotiations relating to the

same through approximately May 2017." (*Id.* ¶ 60.) Ultimately, the parties never executed a contract for the Beer Carton Project. (*Id.* ¶ 74.)

Defendant now moves to dismiss Plaintiff's claims in its Amended Complaint for Fraudulent Misrepresentation/Inducement (Claim III), Fraudulent Omission (Claim IV), Negligent Misrepresentation (Claim V), and Unfair and Deceptive Trade Practices ("UDTPA") (Claim VI[2]), for failure to state a claim upon which relief can be granted. (ECF No. 26 ¶¶ 1–3.)

**STANDARD OF REVIEW**

**A. Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation marks omitted).

---

[2] Plaintiff's UDTPA claim appears to be mistakenly titled as its "Fifth Claim for Relief" in the Amended Complaint. (ECF No. 24 at 23.)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). In considering a Rule 12(b)(6) motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

### B. Rule 9(b)

Where a party alleges fraud, the complaint must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b*)*. The alleged "circumstances" which must be plead with particularity include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation omitted).

The primary purposes of Rule 9(b) are: (1) to give a defendant sufficient notice of the claim(s) against him so that he may formulate a defense; (2) to forestall frivolous lawsuits; (3) to prevent fraud actions in which all facts are learned only through discovery; and (4) to protect

a defendant's goodwill and reputation. *See id.* According to the Fourth Circuit, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Failure to satisfy the heightened pleading requirements of Rule 9(b) subjects a fraud claim to dismissal under Rule 12(b)(6). *Id.* at 783 n.5.

## II. DISCUSSION[3]

### A. Fraudulent Misrepresentation/Inducement (Claim III)

Graphic argues that Packrite's Claim III of the Amended Complaint should be dismissed because it does not meet the elevated pleading standard required by Rule 9(b). (ECF No. 27 at 7.) Specifically, Graphic argues that Packrite's "conclusory allegation" that Graphic did not intend to honor its promised Beer Carton Contract is not supported by sufficient facts. (*Id.*) Packrite argues, on the other hand, that it has alleged sufficient "specific facts giving rise to a plausible inference that [Graphic's] assurances regarding the [Beer Carton Project] were false at the time they were made." (ECF No. 31 at 12.)

To state a claim for fraudulent misrepresentation or fraudulent inducement under North Carolina law, a party must allege the following: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) that was made with the

---

[3] Defendant first argues that "Packrite's purported fraud, negligent misrepresentation, and UDTPA claims are, in actuality, claims for promissory estoppel, which North Carolina law does not recognize as an affirmative cause of action." (ECF No. 27 at 5.) Although Defendant acknowledges that the Amended Complaint does not "identify[ ] them as such," Defendant argues that Plaintiff is essentially "disguis[ing] or re-nam[ing]" promissory estoppel claims as fraud claims. (*Id.* at 5–6.) Defendant points to no authority supporting the argument that a court should overlook a plaintiff's stated claims and dismiss them simply because they could be restated as other claims. *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987) ("[T]he plaintiff is the master of the complaint.")

intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. *See Taylor v. Gore*, 588 S.E.2d 51, 54 (N.C. Ct. App. 2003) (listing the elements of fraudulent misrepresentation); *TradeWinds Airlines, Inc. v. C-S Aviation Servs.*, 733 S.E.2d 162, 168 (N.C. Ct. App. 2012) (listing the elements of fraudulent inducement). Fraud claims must also satisfy the heightened pleading requirements of Rule 9(b). *See Harrison*, 176 F.3d at 783–84.

As stated in the 2018 Order with respect to Plaintiff's original complaint, Packrite in its Amended Complaint has likewise sufficiently alleged the identity of the individuals who made the alleged misrepresentations; when the specific misrepresentations were made; the contents of the misrepresentations; and the results of Graphic's misrepresentations. (*See* ECF No. 19 at 10; ECF No. 24 ¶¶ 27, 31, 32.) The 2018 Order, however, found that Packrite did not allege sufficient facts in the original complaint showing Graphic's "intent to deceive from the outset." (ECF No. 19 at 11, 12 (quoting *Krispy Kreme Doughnut Corp. v. Advantage Grp. Enter., Inc.*, No. 1:08cv0092, 2008 WL 5216227, at *4 (M.D.N.C. Dec. 11, 2008)).) The focus of this Court's inquiry is therefore solely whether Plaintiff's Amended Complaint sufficiently alleges this one element.

"[W]here a fraud claim stems from an alleged failure to fulfill an agreement, the complaint must contain specific factual matter to permit the plausible inference that the defendant did not intend to honor the agreement at the time it was made." *Bon Aqua Int'l, Inc. v. Second Earth, Inc.*, No. 1:10CV169, 2013 WL 357469, at *11 (M.D.N.C. Jan. 29, 2013) (citing *Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 331 (4th Cir. 1994)). Such "specific factual matter" could include "contemporaneous statements to others contradicting [the speaker's] manifested intent or objective facts showing that his intent could not have been truthful when made."

*Krispy Kreme Doughnut Corp.*, 2008 WL 5216227, at *4; *see also* N.C. *Farmers' Assistance Fund, Inc.*

*v. Monsanto Co.*, 740 F. Supp. 2d 694, 705 (M.D.N.C. 2010) ("While intent may be alleged

generally, the circumstances constituting intent to deceive must be alleged with particularity.")

The allegations in the Amended Complaint that may create an inference that Graphic

had an "intent to deceive at the outset" are as follows:[4]

> 26. After Packrite expressed its initial concerns and unwillingness to agree to assist [Graphic] in connection with its onboarding of the Clorox Business, [Graphic] raised a new matter in an attempt to induce Packrite to assist [Graphic] in connection with the Clorox Business—the offer of a long-term contract under which Packrite would produce [Graphic's] requirements of certain "roll to roll 18/12 MillerCoors cartons" (the "Beer Cartons").

> 27. Specifically, in or around August 2016, Chris Berndt, [Graphic's] Director of Operations, engaged in discussions with Packrite in which he specifically stated that, should Packrite agree to assist [Graphic] in connection with the Clorox Business, and invest the capital and time required to do so to the detriment of Packrite's other business prospects, [Graphic] would then agree to enter into a three (3) year contract with Packrite under which Packrite would be the sole producer of [Graphic's] requirements of Beer Cartons. . . .

> 30. Specifically, upon information and belief, [Graphic] knew and understood that the prospect of the Beer Carton Contract provided Packrite with the incentive necessary to undertake what it was initially unwilling to do for a short-term project benefitting only [Graphic]—expend the time, effort and capital necessary to assist [Graphic] in connection with the Clorox Business, all while foregoing new opportunities to expand Packrite's other, separate business opportunities.

> 31. To this end, in or around August 2016, [Graphic], through its Director of Operations, Chris Berndt, specifically and

---

[4] The Court notes that in paragraph 76 of its Amended Complaint, Packrite attempts to summarize what it says has been alleged in its Amended Complaint that evidences Graphic's intent to deceive. (*See* ECF No. 24 ¶ 76.) In that summary, however Packrite does not cite to specific paragraphs of the pleading and appears to argue rather than assert any specific factual allegations. (*See id.*) The Court will therefore not consider such a summary in its evaluation of the Amended Complaint.

unequivocally represented to Packrite, through its representatives Michael Drummond and Kevin Brown, that the Beer Carton Contract would result in gross revenue of approximately $10,000,000.00 per year to Packrite over the course of its performance.

32. Based solely upon the representations of [Graphic], through its Director of Operations, Chris Berndt, regarding the forthcoming Beer Carton Contract, Packrite agreed in late August 2016 to assist [Graphic] in fulfilling its immediate needs related to the Clorox Business.

33. Packrite reasonably believed at that time in August 2016 that, as [Graphic's] Director of Operations, Chris Berndt had the requisite authority to commit [Graphic] to the Beer Carton Contract. . . .

37. As demonstrated by the specific facts set forth herein, the representations made by [Graphic] to Packrite in or around August 2016, by and through [Graphic's] Director of Operations, Chris Berndt, regarding [Graphic's] intent to enter into the Beer Carton Contract with Packrite were false when made. . . .

47. In or around November 2016,[5] shortly after Packrite had begun production of the Clorox Business, representatives of Packrite had a meeting with, among others, Kristopher Dover, [Graphic's] Vice President of Operations, in Atlanta, Georgia regarding the specific details of the promised Beer Carton

---

[5] Graphic points out that Packrite, in its initial Complaint, alleged that Packrite representatives initially met with Kristopher Dover of Graphic in September 2016, (ECF No. 27 at 9–10; ECF No. 2 ¶ 39), and that a letter written by Packrite, attached as Exhibit C to the Amended Complaint, references a September 2016 meeting with Mr. Dover as well, (ECF No. 24 at 46–47). Graphic appears to argue that this shows that the alleged November 2016 meeting with Mr. Dover, in which Packrite first learned that Mr. Berndt did not have authority to bind Graphic to the Beer Carton Contract, actually occurred in September 2016. (ECF No. 27 at 10.) The Court disagrees. The Amended Complaint does not allege that the November 2016 meeting was Packrite's first meeting with Mr. Dover. (*See* ECF No. 24 ¶¶ 47–52.) Instead, the Amended Complaint only alleges that, at that November 2016 meeting, Mr. Dover informed Packrite that Mr. Berndt did not have authority to enter into the Beer Carton Contract and that no one with such authority at Graphic had yet authorized such a contract. (*Id.* ¶¶ 47–48.) Such allegations, contrary to what Graphic asserts, do not contradict Packrite's earlier allegations nor contradict the letter exhibit attached to the Amended Complaint. (*Compare* ECF No. 24 ¶¶ 47–52, *with* ECF No. 2 ¶ 39, *and* ECF No. 24 at 46–47.) The Court therefore declines to "disregard" such allegations. (*See* ECF No. 27 at 10 (citing *Naylor v. Wells Fargo Home Mortg., Inc.*, No. 3:15-cv-116-RJC, 2016 WL 55292, at *5–6 (W.D.N.C. Jan. 5, 2016)).)

Contract. Mr. Dover was a senior executive of the "beverage side" of [Graphic's] business.

48. During that meeting, Kristopher Dover told representatives of Packrite, including at least Michael Drummond, that Chris Berndt, did not actually have the requisite authority to commit [Graphic] to the promised the Beer Carton Contract when he did so in August 2016. Additionally, Mr. Dover indicated to at least Michael Drummond during the same meeting that nobody in a position of authority from the "beverage side" of [Graphic's] business—which did have the requisite authority in regard to the promised Beer Carton Contract—had yet agreed to such a commitment to Packrite.

(ECF No. 24 ¶¶ 26–27, 30–33, 37, 47–48 (footnote added).)

Packrite alleges that, because Mr. Berndt did not have the requisite authority to commit to the Beer Carton Contract, Graphic's "promise to enter into the Beer Carton Contract with Packrite was necessarily false when it was made by [Graphic], by and through Mr. Berndt." (*Id.* ¶ 50.) Graphic argues that Berndt's alleged lack of authority to enter into the Beer Carton Contract "does not preclude the possibility that he meant it sincerely." (ECF No. 27 at 11 (quoting *N. Ala. Elec. Coop. v. TVA*, 862 F. Supp. 2d 1291, 1302 (N.D. Ala. 2012)).) While Graphic's argument may be correct, it misses the point. Packrite is not required, at this stage of the litigation, to dispel all "possibilit[ies]" that may be drawn from the allegations in its Complaint. *See N. Ala. Elec. Coop.*, 862 F. Supp. 2d at 1302 (addressing a motion for summary judgment). Rather, the complaint need only "contain specific factual matter to permit the plausible inference that the defendant did not intend to honor the agreement at the time of its making." *Bon Aqua Int'l*, 2013 WL 357469, at *13. Mr. Berndt's lack of authority, and his concealment of such a material fact, when he allegedly promised Packrite that Graphic would agree to the Beer Carton Contract, when viewed in light of Packrite's other allegations, serves

as such "specific factual matter" that may "permit the plausible inference" of an intent to deceive at the outset. *See id.* Such allegations, when viewed in the light most favorable to Packrite and drawing all reasonable inferences in Packrite's favor, which the Court is obliged to do, is sufficient at this stage to meet Rule 9(b)'s heightened pleading standards. *See Kensington Volunteer Fire Dep't*, 684 F.3d at 467; *Harrison*, 176 F.3d at 784. The Court is satisfied that "the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial" and "that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Accordingly, Graphic's motion to dismiss, as to Count III, will be denied.

### B. Fraudulent Omission (Count IV)

Graphic next argues that Packrite's alternative claim for fraudulent omission should be dismissed. (ECF No. 27 at 12.) A claim for fraudulent omission under North Carolina law must also meet the heightened pleading standards of Rule 9(b). *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997).

> In order to comply with the pleading requirements of Rule 9(b) with respect to fraud by omission, a plaintiff usually will be required to allege the following with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Id.* A relationship that would create a duty to disclose, as contemplated in the first element above, could arise in four situations: (1) "where a fiduciary relationship exists between the parties to the transaction"; (2) "when a party has taken affirmative steps to conceal material facts from the other"; (3) "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence;" *Harton v. Harton*, 344 S.E.2d 117, 119 (N.C. Ct. App. 1986), and (4) when a party speaks about a particular matter, then "a full and fair disclosure as to the matters discussed" may be required, *Shaver v. N.C. Monroe Constr. Co.*, 306 S.E.2d 519, 525 (N.C. Ct. App. 1983) (holding that a company had a duty to disclose to its employee that it had stopped funding the pension plan, when an employee "inquired . . . about the status of the pension plan"). *See also Breeden*, 171 F.R.D. at 196. "Typically, commercial parties in arms-length negotiations with one another do not have a duty to disclose." *RREF BB Acquisitions, LLC v. MAS Props., LLC*, No. 13 CVS 193, 2015 WL 3646992, at *10 (N.C. Super. Ct. June 9, 2015) (collecting cases), *overturned on reconsideration on other grounds*, 2015 WL 7910510 (N.C. Super. Ct. Dec. 3, 2015); *see also Comput. Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.*, 477 S.E.2d 262, 264–66 (N.C. Ct. App. 1996) (holding that when two parties were sophisticated in negotiating commercial real estate transactions, the lessor did not have a duty to disclose to the lessee that it was negotiating a lease with another party for the same premises).

Packrite characterizes its fraudulent omission claim as an "alternative to Packrite's Third Claim for Relief" of fraudulent inducement. (ECF No. 24 ¶ 98.) Packrite alleges that, "if [Graphic's] specific representations to Packrite in August 2016 and in November 2016 regarding the Beer Carton Contract were not knowingly false when made, then at some point

in late 2016 or early 2017 [Graphic] internally decided not to enter into the Beer Carton Contract with Packrite." (*Id.*)  In support of its fraudulent omission claim, Packrite points to the following factual allegations:

> i) the illusory nature of the written contract presented to Packrite in January, 2017—which, even if attempted to be "accepted" by Packrite would have failed for vagueness; ii) the lack of any substantive response, ever, to Packrite's initial revisions to the draft contract; iii) the ongoing assurances that the same was forthcoming; and iv) the fact that [Graphic's] first specific disclosure to Packrite that the [Beer Carton Contract] would *never* be forthcoming coincided *nearly precisely* with the timing of the beginning of production at [Graphic's facility].

(ECF No. 31 at 18.)

Although Packrite attempts to argue that Graphic owed it a duty to disclose when it decided not to enter into the Beer Carton Contract, Packrite fails to specifically allege when such a duty arose or when such allegedly fraudulent omissions occurred.  Packrite's alternative claim for fraudulent omission is based on its allegation that "at some point in late 2016 or early 2017 [Graphic] internally decided not to enter into the Beer Carton Contract with Packrite." (ECF No. 24 ¶ 98.)  Other than this conclusory allegation, Packrite fails to set forth any specific allegations from which a plausible inference could be drawn as to when Graphic's discussions about the Beer Carton Contract somehow moved from being genuine to fraudulent.  This lack of particularity fails to give Packrite sufficient notice of the claim against it so that it may formulate a defense, thereby failing one of Rule 9(b)'s primary purposes.  *See Harrison*, 176 F.3d at 784.  Accordingly, Graphic's motion to dismiss as to Count IV will be granted.

### C. Negligent Misrepresentation (Count V)

Packrite next alleges, in the alternative to Counts III and IV, a claim for negligent misrepresentation. (ECF No. 24 ¶¶ 106–10.) As stated in the Court's 2018 Order, a claim of negligent misrepresentation "is subject to the heightened pleading requirements of Rule 9(b)." (ECF No. 19 at 14 (citing *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 727–28 (M.D.N.C. 2015)).) "[T]he tort of negligent misrepresentation 'occurs when in the course of a business or other transaction in which [an] individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction without exercising reasonable care in obtaining or communicating the information.'" *Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004) (quoting *Rhodes, Inc. v. Morrow*, 937 F. Supp. 1202, 1215 (M.D.N.C. 1996)); *see also Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 367 S.E.2d 609, 612 (N.C. 1988).

The Amended Complaint identifies "the representations and assurances made and given by [Graphic] to Packrite in regard to the long-term Beer Carton Contract" as the allegedly negligent misrepresentations made by Graphic. (ECF No. 24 ¶¶ 107–08.) Packrite's allegations give no further detail as to which representations by Graphic were allegedly negligent. (*See id.* ¶¶ 105–10.) Further, neither party devotes more than a single paragraph in their briefs to discussing Packrite's negligent misrepresentation claim. (*See* ECF No. 27 at 14; ECF No. 31 at 19.) Therefore, the Court concludes that, for the reasons discussed in Section III.B above, Packrite has likewise failed to satisfy Rule 9(b)'s pleading requirements with respect to its claim of negligent misrepresentation. Accordingly, Graphic's motion to dismiss Count V will be granted.

### D. Unfair and Deceptive Trade Practices (Count VI)

Graphic argues that "Packrite's UDTPA allegations are identical to its fraud allegations" and should therefore be dismissed. (ECF No. 27 at 14.) Indeed, the Amended Complaint simply refers to "[Graphic's] wrongful and unlawful actions and conduct, as described above," when alleging its UDTPA claim. (ECF No. 24 ¶ 112.) As discussed above, however, Packrite's claim of fraudulent inducement will not be dismissed.

As stated in the Court's 2018 Order, a UDTPA claim is subject to the enhanced pleading requirements of Rule 9(b). (ECF No. 19 at 16.) A party asserting a UDTPA claim must allege: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000)). A fraudulent inducement claim is such an "unfair or deceptive act" that can support a UDTPA claim. *Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC*, 116 F. Supp. 3d 644, 659 (M.D.N.C. 2015), *aff'd*, 845 F.3d 104 (4th Cir. 2016); *Media Network, Inc. v. Long Haymes Carr, Inc.*, 678 S.E.2d 671, 684–85 (N.C. Ct. App. 2009). Therefore, Packrite's claim of fraudulent inducement can satisfy the elements of its UDTPA claim as well. Accordingly, Graphic's motion to dismiss Packrite's UDTPA claim will likewise be denied.

For the reasons stated herein, the Court enters the following:

### [ORDER TO FOLLOW ON NEXT PAGE]

## ORDER

IT IS THEREFORE ORDERED that Defendant's Partial Motion to Dismiss the Complaint, (ECF No. 26), is GRANTED IN PART AND DENIED IN PART. Defendant's motion is hereby GRANTED as to Plaintiff's fraudulent omission claim (Count IV) and Plaintiff's negligent misrepresentation claim (Count V). Counts IV and V are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion is hereby DENIED as to Plaintiff's fraudulent misrepresentation/inducement claim (Count III), and Plaintiff's UDTPA claim (Count VI).

This, the 9th day of July 2019.

/s/ Loretta C. Biggs
United States District Judge