IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-01019-LCB-LPA

| | |
|---|---|
| PACKRITE, LLC,<br><br>              Plaintiff,<br><br>   v.<br><br>GRAPHIC             PACKAGING<br>INTERNATIONAL, LLC,<br><br>              Defendant. | **MEMORANDUM IN SUPPORT OF<br>THE IMPOSITION OF SANCTIONS<br>FOR SPOLIATION OF EVIDENCE** |

Plaintiff PACKRITE, LLC ("**Packrite**" or "**Plaintiff**"), by and through its counsel of record and pursuant to Federal Rule of Civil Procedure 37(e), and the inherent powers of this Court, respectfully moves for the imposition of sanctions against Defendant GRAPHIC PACKAGING INTERNATIONAL, LLC's ("**GPI**", "**Graphic**", or "**Defendant**") for its spoliation of evidence (the "**Motion**"). In support of its Motion, Packrite states as follows:

I.       **INTRODUCTION**

Despite being under an obligation to preserve documents and communications as early as May of 2017, Defendant willfully destroyed emails that are relevant to Packrite's claims and failed to place a litigation hold on the automatic destruction of evidence until after Packrite filed its initial complaint in October 2017. In addition, Defendant failed either: i) to make reasonable efforts to search for and retrieve relevant Electronically Stored Information ("**ESI**"), or; ii) to protect ESI from being destroyed by its employees. The Court should therefore sanction GPI by entering default judgment in favor of Packrite's claims and by dismissing its counterclaims in their entirety.

1

## II.    RELEVANT FACTS AND PROCEDURE[1]

In August 2016, Defendant contacted Packrite with an urgent request for assistance in fulfilling an essential contract to produce packaging for "Clorox Kitty Litter" (the "**Clorox Business**") in which Defendant itself lacked the capacity necessary to complete. (Doc. 69, ¶¶15–17). Accordingly, Defendant requested that Packrite provide urgently-needed production capacity in connection with the Clorox Business for a period of time sufficient to allow Defendant to upgrade and install new equipment at the Solon Facility. (Doc. 69, ¶¶18, 20). However, Packrite declined Defendant's request because doing so would require Packrite to expend significant resources - including the addition of employees and expensive equipment - and to dedicate a large amount of its production capacity exclusively to the Clorox Business, which both parties understood would represent a short-term project for Packrite. (Doc. 69, ¶¶19, 21–25).

To induce Packrite's assistance with the Clorox Business, Chris Berndt, an employee of Defendant, specifically represented to Packrite in August, 2016 that if Packrite would assist Defendant in production of the Clorox Business, then Defendant would agree to a three (3) year contract under which Packrite would be the sole producer of Defendant's requirements of certain "roll to roll 18/12 MillerCoors cartons" ("**Beer Cartons**" and the "**Beer Carton Contract**"), which Berndt specifically represented would result in gross revenue to Packrite of approximately $10 million per year. (Doc. 69, ¶¶26–27, 31). Based on Chris Berndt's representations concerning the Beer Carton Contract in late August, 2016, (which were subsequently reaffirmed by higher ranking employees of Defendant Kristopher Dover and Ryan Ingalls), Packrite agreed to produce the Clorox Business. (Doc. 69, ¶32).

---

[1] The Court is well-versed on the facts and procedure underlying this matter. Accordingly, Packrite endeavors to only detail those items necessary for consideration of this Motion.

2

On May 26, 2017, as work on the Clorox Business was being completed and transitioning away from Packrite, Kevin Brown, an employee of Packrite, sent a letter to Kristopher Dover, a representative of Defendant, asking for clarity as to the status of the Beer Carton Contract that was promised to Packrite by Chris Berndt (and subsequently Kristopher Dover), and of which the related production was scheduled to begin at Packrite in June 2017 (the "**May 2017 Letter**"). *See* **Exhibit A**. Packrite never received any direct response to this letter, but shortly thereafter, once Packrite had substantially completed work on the Clorox Business, and Defendant brought "quality claims" against Packrite as a vehicle for it to wrongfully refuse to pay substantial amounts of purchase orders fulfilled by Packrite pursuant to the Clorox business, Defendant told Packrite for the very first time that it would not enter into the Beer Carton Contract. (Doc. 69, ¶¶65–70, 98). On September 22, 2017, Packrite, through counsel, sent a letter to Defendant informing Defendant of Packrite's intentions to file the instant lawsuit and giving clear instructions to Defendant regarding its obligation to preserve evidence relevant to the parties' disputes (the "**September 2017 Letter**"). *See* **Exhibit B**.

Since the initial filing of this lawsuit, the parties have conducted discovery and have produced extensive volumes of ESI. However, it has become apparent that missing from the ESI produced by Defendant are relevant email communications and documents belonging to, among others, Defendant's former employee Chris Berndt - the very representative who Packrite has alleged from the beginning was first responsible for making fraudulent representations and omissions regarding the Beer Carton Contract. Packrite has learned through conducting its 30(b)(6) Deposition of Defendant, that Chris Berndt's employment with Defendant was terminated in July of 2017, shortly after Defendant's receipt of Packrite's May 2017 Letter. Subsequent to termination, Defendant has testified that it permanently erased all files stored in all of the email

3

folders belonging to Chris Berndt during this period of reasonable certainty that litigation was forthcoming.

In addition, Defendant also permanently erased all files stored in the email folders belong to Rich Richkowski, another former employee of Defendant who was instrumental in developing and bringing the "quality claims" against Packrite. Lastly, it has become apparent that Defendant <u>never</u> conducted any global search whatsoever of its electronic records in an effort to comply with Plaintiff's discovery requests, but simply requested that its employees individually send whatever documents they each believed to be "relevant". *See* 30(b)(6) Deposition of Defendant, p. 97–99 (*See* **Exhibit C**). The information determined by each of these employees was thereafter sent to Defendant's in-house, general counsel, taking no measures whatsoever to ensure that all relevant documents were actually provided by its employees or that its employees did not preemptively delete or destroy certain ESI rather than produce them for discovery. *See* 30(b)(6) Deposition of, p. 97–99 (*See* **Exhibit C**).

## III.   <u>APPLICABLE LAW</u>

### A.  <u>Spoliation in General</u>

"Spoliation of evidence is 'the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001). "The duty to preserve evidence arises 'not only *during* litigation but also extends to that period *before* litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Jenkins v. Woody,* Civil Action Co. 3:15cv355, 2017 U.S. Dist. LEXIS 9581, at *30 (E.D. Va., 2017) (quoting *Silvestri,* at 591).

A court's power to sanction a party for spoliation of evidence derives from (1) Federal Rule of Civil Procedure 37(e) and (2) the court's "inherent power . . . to redress conduct 'which abuses the judicial process." *Silvestri,* at 590 (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991)). District Courts have broad discretion "to choose the appropriate sanction for a party's spoliation, but should use that discretion to 'serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Jenkins,* 2017 U.S. Dist. LEXIS 9581, at *30 (quoting *Silvestri,* 271 F.3d at 590). In sanctioning a party, the court must be cognizant that a "sanction in response to spoliation should '(1) deter parties from engaging in spoliation; (2) <u>place the risk of an erroneous judgment on the party who wrongfully created the risk;</u> and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence.'" *Eshelman v. Puma Biotechnology, Inc.,* No. 7:16-CV-18-D, 2017 U.S. Dist. LEXIS 87282, at *11–12 (E.D.N.C., 2017) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999))(emphasis added).

**B.  <u>Sanctioning Spoliation Pursuant to Rule 37(e)</u>**

Federal Rule of Civil Procedure 37(e) – which governs spoliation of electronically stored information – permits the Court broad discretion to sanction a party who should have, but fails to, take reasonable steps to preserve ESI in the anticipation or conduct of litigation that cannot be restored or replaced through additional discovery.  Upon a finding of prejudice to another party, the Court may order measures no greater than necessary to cure the prejudice.  FED. R. CIV. P. 37(e).  If the Court finds the spoliator acted with intent to deprive another party of the use of the information, it may (1) presume the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume the information was unfavorable to the party; or (3) <u>dismiss the action or enter a default judgment.</u> *Id.*  Prior to the imposition of sanctions under Rule 37(e), the

moving party must make a threshold showing that: (1) ESI should have been preserved in the anticipation or conduct of litigation; (2) the ESI was lost due to a party's failure to take reasonable steps to preserve the ESI; and (3) the ESI cannot be restored or replaced through additional discovery. *See, Steves & Sons, Inc. v. Jeld-Wen, Inc.,* 327 F.R.D. 96, 104 (E.D. Va. 2018). *See also, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 194 (2018).

### C. Sanctioning Spoliation Under the Inherent Powers of the Court

Regardless of whether lost or destroyed evidence consists of ESI, the Court possesses "the inherent power to impose sanctions 'for conduct which abuses the judicial process.'" *Superior Performers, Inc., v. Meaike,* No. 1:13CV1149, 2015 U.S. Dist. LEXIS 12937, at **6–7 (M.D.N.C. Feb. 4, 2015) (quoting *Chambers,* 501 U.S. at 44–45). In this context, the Court considers whether:

> (1) The party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Id.,* at *8 (quoting *Thompson v. U.S. Dep't of Housing and Urban Development,* 219 F.R.D. 93, 101 (D. Md. 2003)). Naturally, the sanctions provided for in Rule 37(e) are also available to the Court under its inherent powers, as are lesser sanctions such as the award of attorney's fees, costs, and punitive fines. *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 534–37 (D. Md. 2010).

### IV. ARGUMENT

Here, it is clear that GPI has willfully caused the destruction of an untold number of ESI documents with the intent to deprive Packrite of documents that support its claims. Pursuant to

6

Federal Rule of Civil Procedure 37(e) and/or its inherent authority, the Court should sanction GPI by entering a default judgment in favor of Packrite upon all of its claims and by dismissing GPI's counterclaims.

### A.  The Court Can, and Should, Sanction Defendant Pursuant to Rule 37(e)

This Court should sanction Defendant pursuant to Federal Rule of Civil Procedure 37(e) because Packrite satisfies its threshold determination under the Rule 37(e) and Defendant has deprived Packrite of responsive documents that it was obligated to preserve.

### i.  By its own Admission, Defendant's Obligation to Take Reasonable Steps to Preserve ESI Arose in May 2017.

A party has a duty to preserve ESI when he or she *reasonably anticipates litigation* and he or she reasonably should know that the deleted evidence might be relevant to litigation.  *Steves & Sons*, 327 F.R.D. at 105.  Here, by its own admission, Defendant's obligation to preserve ESI arose upon its receipt of the May 2017 Letter from Packrite representative Kevin Brown on May 26, 2017.  In the Letter, Kevin Brown requested that Defendant's employee Kristopher Dover provide Packrite with a definitive answer as to the status of the Beer Carton Contract.  *See* **Exhibit A**.  This letter plainly stated to the Defendant that (1) in August 2016,  Defendant had made representations to Packrite that if Packrite would make the requisite investments and assist Defendant in production of the Clorox Business through June of 2017, then Defendant would enter into the long term Beer Carton Contract with Packrite, (2) that Packrite had fulfilled its end of the bargain in completing work on the Clorox Business, and (3) that Packrite's efforts to negotiate and draft the Beer Carton Contract and its inquiries as to the status of the same had been largely ignored by the Defendant.  *See id.*

Receipt of the May 2017 Letter either put Defendant on notice, or reasonably should have put Defendant on notice, that Packrite expected Defendant to honor the commitments it had made

to Packrite, and that failure to do so would result in litigation. In fact, <u>Defendant has admitted</u> <u>through counsel that receipt of the May 2017 Letter caused Defendant to anticipate this instant</u> <u>litigation and thus asserted attorney work product privilege</u> in refusing to answer questions regarding Defendant's response (or lack thereof) to the May 2017 Letter:

258

```
 6  Q.   Did you at that time, July 20th, 2017,
 7  shortly there before, have any personal knowledge
 8  or involvement in any of the matters that are
 9  described in the third paragraph of Exhibit 111?
10  A.   I think we are getting into work product
11  there.
12  Q.   I don't think so at all.  That has nothing
13  to do with work product.
14          I want to know if you, Mr. Biddle,
15  had any involvement in any of the matters that
16  relate to what is described in the third
17  paragraph of Exhibit 111?
18          MR. ERWIN:  We will object and
19          assert the work product privilege.  I
20          mean, if you want to ask Graphic's
21          position on this letter or anything
22          about Graphic in this letter, but to
23          the extent that you are asking for Mr.
24          Biddle personally and his
25          communications personally at the time
```

259

```
 1  of this, that is privilege.  But I
 2  think he is here today to testify about
 3  Graphic's position on things and he's
 4  perfectly capable and willing to do
 5  that.
 6          MR. FINAN:  I have asked him
 7  whether -- I have asked Mr. Biddle
 8  whether he had any personal knowledge
 9  or involvement in the matters that are
10  described in the third paragraph of
11  Exhibit 111.  It has nothing to do with
12  work product.
13          MR. ERWIN:  Well, what I
```

8

**14** **understand him to be saying is that**
**15** **after the May 26th, 2017 Kevin Brown**
**16** **letter, which we -- we perceive to be**
**17** **getting ready for litigation, then at**
**18** **that point we were also getting ready**
**19** **for litigation in anticipation of**
**20** **litigation, so his involvement would**
**21** **then be work product. It is his**
**22** **personal involvement in this letter**.

Biddle, Barry, (Pages 258:6 to 259:22) (emphasis added); *See* **Exhibit D**. Quite simply, Defendant cannot 'have it both ways' and claim that after receipt of the May 2017 Letter that it was in anticipation of litigation for the purpose of claiming privilege, but that it did not anticipate litigation for purposes of preserving relevant ESI.

Even if the May 2017 Letter was not sufficient for Defendant to reasonably anticipate litigation, Defendant's obligation to preserve ESI arose <u>at the very latest</u> on September 22, 2017 upon receipt of the September 2017 Letter, which specifically informed Defendant of Packrite's intent to file this instant lawsuit and gave explicit instructions to preserve evidence related to its claims. *See Exhibit B; Steves & Sons,* 327 F.R.D. at 106 ("[C]ourts in the Fourth Circuit have found that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence.")

 ii. <u>Defendant Failed to Take Reasonable Steps to Preserve, Search for, and Retrieve Relevant ESI</u>

The duties encompassed by the litigation hold and in responding to discovery requests is to make reasonable efforts to preserve, search for, and retrieve relevant ESI.[2] Evidence is lost, for purposes of spoliation, when it is "irretrievable from another source, including other custodians,"

---

[2] This duty to preserve, search for, and retrieve extends to both the party and the party's counsel. *See Phoenix Four, Inc., v. Strategic Resources Corp.,* 2006 U.S. Dist. LEXIS 32211 (S.D.N.Y., 2006) (imposing sanctions on party for failing to conduct adequate searches of its computer server for ESI, as well as its counsel for their failure to follow up with the party as to the scope of their searches or information systems management).

and proving this factor is a "low bar." *Steves & Sons,* 327 F.R.D. at 107–08. Generally, a party "must suspend its routine document retention/detention policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Steves & Sons,* 327 F.R.D. at 108.

In the 30(b)(6) deposition of Defendant Graphic Packaging, of which Barry Biddle, Defendant's in-house, General Counsel was selected by Defendant to serve as the 30(b)(6) witness, the following facts regarding Defendant's retention and retrieval policies were discovered:

- Defendant's document retention system automatically deletes the email folders of former employees within 30 days of the employment being terminated. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 131 (*See* **Exhibit E**); p. 202. (*See* **Exhibit F**).

- Chris Berndt, who had been named in Packrite's pleadings as being heavily involved in the acts and omissions upon which Packrite's claims against Defendant are based, left his position at Defendant Graphic Packaging in June or July 2017. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 202. (*See* **Exhibit F**).

- Defendant did not put in place a litigation hold on the automatic deletion of ESI until October 2017. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 131. (*See* **Exhibit E**).

- Another former employee of Defendant, Rick Richkowski, whom had been involved in investigating Defendant's quality claims against Packrite, left his position with Defendant prior to October 2017. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 57. (*See* **Exhibit G**); p. 131 (*See* **Exhibit E**).

- Due to the aforementioned circumstances and failure of Defendant to timely institute a litigation hold, the email folders of former employees of Chris Berndt and Rich Richkowski have been entirely lost. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 131 (*See* **Exhibit E**); p. 202. (*See* **Exhibit F**).

- No global search was ever conducted on Defendant's overall email system, and instead, Defendant relied on its current employees to simply share what documents they thought to be relevant. There were no precautions put in place to prevent individual employees from deleting or withholding relevant ESI. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 97–99. (*See* **Exhibit C**).

Further, the recent deposition of Joseph P. Yost, Defendant's Executive Vice President, provides further support for the contention that the Defendant failed to take any reasonable

measures to preserve, search for, retrieve and produce to Packrite in discovery relevant ESI. In his deposition, Mr. Yost claims to have no recollection of whether he ever searched for or retrieved documents related to Packrite or its claims, nor was he ever requested by Defendant's in-house counsel to do so. *See* Deposition Transcript of Joseph P. Yost, p. 9–10. (*See* **Exhibit H**).[3] Further, Mr. Yost testified that it is a regular practice of his to delete his <u>entire email folder</u> every thirty to sixty days. *See* Deposition of Joseph P. Yost, p. 11 (*See* **Exhibit H**). Lastly, Mr. Yost testified that he did not even begin to collect documents related to Packrite or its claims until after the lawsuit had been initiated (which was October 2017). *See* Deposition Transcript of Joseph P. Yost, p. 12–13. (*See* **Exhibit H**).

Here, the Defendant has plainly failed to satisfy its obligations in at least two ways; (1) Defendant caused the wholesale deletion of the email folders of Chris Berndt and Rich Richkowski, and (2) the Defendant's method of relying on individual employees for the search and retrieval of ESI, with no measures to prevent spoliation, are inadequate and unreasonable. *See Burnett v. Ford Motor Co.,* 2015 U.S. Dist. LEXIS 88519 (S.D. W.Va., 2015) (granting motion to compel defendant to conduct global search of computer records using key word search terms requested by Plaintiff upon learning defendant relied on its employees to search their own records without monitoring how the searches were conducted.)

   iii. <u>Defendant Acted Willfully in Failing to Preserve, Search for, and Retrieve ESI, with Intent to Deprive Packrite of Evidence Favorable to its claims and contradictory to Defendant's Claims</u>

Satisfying the threshold inquiry that Defendant failed its obligation to preserve relevant ESI, Packrite is entitled to a dispositive sanction because Defendant willfully and knowingly

---

[3] The Deposition of Joseph P. Yost took place on September 22, 2020 with the mutual consent of the parties as to the date following the Court's ruling on GPI's "Apex Doctrine" motion. As such, the official transcript is unavailable, but the initial "rough draft" of the transcript has been provided in its stead.

destroyed the ESI of Chris Berndt and Rick Richkowski with the intent to deprive Packrite of favorable evidence. Defendant has destroyed documents that are necessary for Plaintiff to succeed on its claims for Fraudulent Omission and Unfair and Deceptive Trade practices, as well as documents that refute Defendant's counterclaims for Breach of Warranty.

The destruction of evidence, even by a document retention policy is "willful" destruction of evidence. *See Powell v. Town of Sharpsburg,* 591 F. Supp. 2d 814, 821, 2008 U.S. Dist. LEXIS 105398, *14-16 (E.D.N.C. 2008) ("The court finds that defendant's destruction of the work orders was willful. Defendant intentionally and deliberately destroyed them pursuant to its document retention policy.") A failure to preserve documents in bad faith, such as intentional or willful conduct, alone establishes that the destroyed documents were relevant. *Sampson v. City of Cambridge,* 251 F.R.D. 172, 179, 2008 U.S. Dist. LEXIS 53003, *18–19 (D.Md. 2008) ("the reason relevance is presumed following a showing of intentional or willful conduct is because of the logical inference that, when a party acts in bad faith, he demonstrates fear that the evidence will expose relevant, unfavorable facts.")

For approximately five months, Defendant failed to take action to preserve ESI, despite the fact that its former employee, Chris Berndt - whom was named in the May 2017 Letter as being responsible for first making the representations that serve as the basis for Packrite's fraud and UDTPA claims[4] - had either been terminated or resigned from his position with Defendant in June or July 2017. After admittedly anticipating litigation regarding the acts and omissions of Defendant, namely through Chris Berndt, whose employment was terminated shortly thereafter, Defendant failed to institute a litigation hold until October 2017, by which time all of the contents

---

[4] Critically, based on the documents and evidence that had been produced by GPI – believing that production, at the time, to be a full and complete disclosure – Packrite voluntarily abandoned certain of its claims in its filing of the Second Amended Complaint.

within the email folders of Chris Berndt and Rick Richkowski had been entirely, and apparently permanently, deleted.  And even then, the purported "litigation hold" that is asserted by GPI to have been put in place was plainly insufficient, as it appears to have permitted individual employees having potentially relevant and discoverable information to individually delete emails. The attached 30(b)(6) deposition transcript makes clear that this manner of data collection and preservation for litigation purposes is GPI's standard procedure – a troubling practice for a multi-billion dollar, publicly-traded corporation.

As a plain example of the prejudice to Packrite that follows GPI's willful destruction of evidence, Defendant asserts, among other things, that Packrite used incorrect glue patterns with insufficient strength test results as a basis for its "quality claims" by which it refused to pay $196,924.31 to Packrite for fulfilled purchase orders and by which it asserts as a counterclaim in this action.  Doc. 73, ¶¶ 34–45.  Although Defendant admittedly deleted the entirety of Rich Richkowski's email folders after the date upon which it admits to being under the anticipation of litigation, (*see* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 131 (*See* **Exhibit E***;* p. 259 (*See* **Exhibit D**)), Packrite itself (fortunately) had possession of at least one of these critical lost documents in its own records.  This document, the "Church & Dwight Quality Impact Report," which Rich Richkowski shared with Michael Drummond of Packrite to discuss levels of "fiber tear," reveals that all of the Church & Dwight 40lb packages had "handle drop test" scores "within acceptable limits."  *See* **Exhibit I**.  Coupled with a prior approval of the "glue pattern" used by Packrite on the Church & Dwight kitty litter boxes, GPI's $196,924.31 "quality claim" relating to these items is entirely debunked.  Again, Packrite was fortunate to have obtained – and properly preserved – this email from Mr. Richkowski.  However, as the remainder of Mr.

Richkowski's emails have been permanently deleted by GPI, there is no telling what other evidence favorable to Packrite's position they may have obtained.

In a fraud or UDTP case, having all relevant and discoverable evidence produced is critically important. In such cases, courts often look to "badges of fraud" as circumstantial evidence because direct proof of actual fraud is "hard to come by." *Connelly v. Roberts & Stevens, P.A.,* 2005 U.S. Dist. LEXIS 52020 *9 (W.D.N.C., 2005). "Intent rarely is proved by direct evidence" and the court has "leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Nuvasive, Inc. v. Kormanis,* 2019 U.S. Dist. LEXIS 40195, *34-35 (M.D.N.C., 2019).

Here, Packrite <u>knows</u> that the email folders of Mr. Richkowski contained highly-relevant documents contradictory to Defendant's claims against Packrite, and Defendant deleted the email folders in their entirety after being under an obligation – <u>by their own admission</u> – to preserve them. With respect to Packrite's fraud and UDTP claims, it will now never know what other information relevant to those claims as been forever lost. While the prejudice of this particular instance of spoliation was minimized by Packrite fortunately having its own copy of this document, <u>the same cannot be said regarding the other untold numbers</u> of documents deleted by Defendant from the email folders of, at least, Rich Richkowski and Chris Berndt. A valid inference that these lost documents were favorable to Packrite can be made by virtue of the fact that other documents that Defendant destroyed from Rich Richkowski's email folders expressly contradict the bases for Defendant's counterclaims.

B. <u>Additionally, or in the Alternative, the Court Can and Should, Sanction Defendant Under its Inherent Powers</u>

This Court's inherent powers provide an additional avenue to sanction Defendant for its willful spoliation of evidence. *See, e.g., Superior Performers,* 2015 U.S. Dist. LEXIS 12937, at

14

*6-7. Spoliation is "conduct which abuses the judicial process when the spoliator: (1) had an obligation to preserve the evidence when it was destroyed or lost; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) a reasonable factfinder could conclude that the spoliated evidence was relevant to the claims or defenses of the party seeking it. *Id.* "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault – be it bad faith, willfulness, gross negligence, or *ordinary negligence* – is a sufficiently culpable mindset." *EEOC v. Womble Carlyle Sandridge & Rice, LLP,* No. 1:13CV46, 2014 U.S. Dist. LEXIS 793, at *12 (M.D.N.C. Jan. 6, 2014) (quoting *Victor Stanley,* 269 F.R.D. at 529). Further, "[o]nce the duty to preserve attaches, any destruction of documents is, *at minimum,* negligent." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220, 2003 U.S. Dist. LEXIS 18771 *25 (S.D.N.Y. 2003).

As previously mentioned, Defendant was under an obligation to preserve ESI upon its receipt of the May 2017 Letter from Kevin Brown, which Defendant itself admitted, through counsel, caused Defendant to be in anticipation of litigation for purposes of asserting privilege. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 259 (*See* **Exhibit D**). As held in *Powell,* the destruction of evidence, <u>even due to an automated document retention system,</u> is considered willful spoliation when the spoliating party is under a duty to preserve the destroyed evidence. *See Powell,* at 821, 2008 U.S. Dist. LEXIS 105398, *14-16. However, even where the evidence is not destroyed by an automated document retention system, but instead by an employee failing to follow instructions not to destroy evidence, the spoliation is still considered negligent. *Id.* ("There is no evidence suggesting that Defendant's destruction of the work orders was negligent, such as the result of failure by an employee to follow instructions not to destroy them.")

15

Here, not only did Defendant cause the email folders of, at least, Chris Berndt and Rich Richkowski to be destroyed, but untold numbers of other relevant documents have very likely been lost due to Defendant's failure to make <u>any reasonable effort whatsoever</u> to ensure that its employees complied with its requests for documents. By way of example, in his deposition, Mr. Yost was asked by Packrite's counsel if he directed Ryan Ingalls, an employee of Defendant, to "stall Packrite" on the Beer Carton Contract, to which he responded that he did not recall, but that Mr. Ingalls did not report to anyone other than him (Mr. Yost). *See* Deposition Transcript of Joseph P. Yost, p. 111–12. (*See* **Exhibit J**). Mr. Yost testified that he regularly deleted his emails every thirty to sixty days, and did not begin to collect documents related to the lawsuit -if at all- until after Packrite had filed its first complaint in October 2017. *See* Deposition Transcript of Joseph P. Yost, p. 11–13. (*See* **Exhibit H**). Thus, had Packrite had the benefit of a full and proper production of Mr. Yost's emails, the question of whether he had directed Mr. Ingalls to "stall Packrite" may well have been able to be conclusively answered. In the absence of those emails – and as Mr. Yost purportedly "did not recall" whether he had given Mr. Ingalls such an instruction – Packrite may now never be able to prove this fact.

Again, GPI's willful destruction of relevant ESI, coupled with its admitted failure to even minimally comply with its obligations to preserve and produce the same in this action, is considerably prejudicial to Packrite. In this single example, the only person who would have had the authority to direct Defendant's employees to "stall" Packrite claims to have no recollection of doing so and has admitted on record to destroying his personal email folder, during a period that Defendant has admitted through counsel it was in anticipation of this litigation. *See* 30(b)(6) Deposition of Defendant Graphic Packaging International, p. 259 (*See* **Exhibit D**).

16

It is not unreasonable to suspect that the termination of Chris Berndt's employment with Defendant may have been in some way related to the pertinent facts of the present case. With this in mind, relying solely on the "honor system"[5] of each employee not to destroy documents that may show further culpable conduct by employees on behalf of Defendant is "at minimum, negligent." *Zubalake,* at 220, 2003 U.S. Dist. LEXIS 18771 *25. Defendant has failed to take reasonable measures to preserve, search for, and retrieve relevant ESI, and the full extent of prejudice faced by Packrite as a result will never truly be known as untold numbers of documents have been permanently destroyed.

## C. <u>The Appropriate Sanction is a Default Judgment in Favor of Packrite's Claims and Dismissal of Defendant's Counterclaims</u>

The appropriate sanction this Court should impose is to enter a judgment by default in favor of Packrite as to each of its claims. Such a sanction will "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Victor Stanley,* 269 F.R.D. at 533 (quoting *Silvestri,* 271 F.3d at 590). "Put another way, appropriate sanctions should (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* at 533-34.

> In the Fourth Circuit, to order these harshest sanctions, the court must be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim.

*Victor Stanley Inc., v. Creative Pipe, Inc.,* 269 F.R.D. 497, 534, 2010 U.S. Dist. LEXIS 93644 **133–134 (D. Md. 2010). Respectfully, no lesser sanctions will further these express goals aside from a dispositive sanction in favor of Packrite. As the Court is aware, GPI has elected to

---

[5] 30(b)(6) Deposition of Defendant Graphic Packaging International, LLC, p. 105. (*See* **Exhibit C***).*

17

file a Motion for Partial Summary Judgment in relation to Packrite's Fraud and UDTPA claims. (Doc. 92). <u>Due to Defendant's spoliation of evidence, Packrite has been denied the use of untold numbers of documents that may well have been highly-relevant in defense of the pending Motion.</u> *See ACORN v. County of Nassau,* 2009 U.S. Dist. LEXIS 19459, (E.D.N.Y., 2003) (holding the failure to preserve potentially relevant information may result in the imposition of sanctions even if the actual relevance of the information cannot be proven).

Imposition of any lesser sanction will only incentivize litigants in similar cases to purposefully fail to put an appropriate document retention policy in place, and then use this lack of evidence in favor of the opposing party to have their claims dismissed before ever reaching a jury and being subjected to the spoliation sanctions. The only way to restore Packrite to the position that it would have been in (i.e., in possession of the communications) is to recognize that through the wholesale deletion of massive amounts of documents that favor Packrite's claims and contradict its claims, the defendant has forfeited its claims and enter a judgment by default in favor of Packrite.

## V.      <u>CONCLUSION</u>

For all of the reasons set forth herein, Packrite respectfully requests that this Court:

(1)     Find that the Defendant willfully-destroyed evidence;

(2)     Find that the Defendant failed to take any precautions whatsoever to prevent deletion of documents by its employees;

(3)     Find that the Defendant failed to fully and properly search and produce its ESI;

(4)     Sanction the Defendant by entering a default judgment in Packrite's favor as to all claims and counterclaims; and

18

(5)     Tax the Defendant with Packrite's costs of this Motion, including its reasonable attorney's fees; and

(6)     Grant any other form of appropriate relief which the Court deems just and proper under the circumstances.

This the 24th day of September, 2020.

By:     /s/ Christopher C. Finan
        Christopher C. Finan, N.C.S.B. No. 27820
        *Attorney for Plaintiff Packrite, LLC*

<u>OF COUNSEL:</u>

ROBERSON HAWORTH & REESE, P.L.L.C.
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC  27261
Telephone:  (336) 889-8733
Facsimile:  (336) 885-1280
Email:      cfinan@rhrlaw.com

## <u>CERTIFICATION OF WORD COUNT</u>

The undersigned hereby certifies to the Court that the foregoing **MEMORANDUM IN SUPPORT OF THE IMPOSITION OF SANCTIONS FOR SPOLIATION OF EVIDENCE** complies with L.R. 7.3(d)(1) in that it is less than 6,250 words in length, as calculated utilizing the word count feature of the undersigned's word processing program.

This the 24th day of September, 2020.

/s/ Christopher C. Finan
Christopher C. Finan, N.C.S.B. No. 27820
*Attorney for Plaintiff Packrite, LLC*

<u>OF COUNSEL:</u>

ROBERSON HAWORTH & REESE, P.L.L.C.
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC 27261
Telephone: (336) 889-8733
Facsimile: (336) 885-1280
Email: cfinan@rhrlaw.com

20

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-01019-LCB-LPA

| | |
|---|---|
| PACKRITE, LLC, | |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| GRAPHIC PACKAGING INTERNATIONAL, LLC, | |
| Defendant. | |

This is to certify that the undersigned counsel has this date electronically filed the foregoing **MEMORANDUM IN SUPPORT OF THE IMPOSITION OF SANCTIONS FOR SPOLIATION OF EVIDENCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record that have made an appearance in this case.

Lex M. Erwin
Joseph W. Moss, Jr.
Matthew M. Holtgrewe
Erwin Bishop Capitano & Moss, PA
4521 Sharon Road, Suite 350
Charlotte, NC 28211

This the 24th day of September, 2020.

/s/ Christopher C. Finan
Christopher C. Finan, N.C.S.B. No. 27820
*Attorney for Plaintiff Packrite, LLC*

OF COUNSEL:

ROBERSON HAWORTH & REESE, P.L.L.C.
300 North Main Street, Suite 300
P.O. Box 1550
High Point, NC 27261
Telephone: (336) 889-8733
Facsimile: (336) 885-1280
Email:     cfinan@rhrlaw.com

21