IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PACKRITE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1019 |
| | ) | |
| | ) | |
| GRAPHIC PACKAGING | ) | |
| INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court are Defendant's Motion to Dismiss two of Plaintiff's claims in its Second Amended Complaint ("Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, (ECF No. 71), and Defendant's Motion for Partial Summary Judgment, related to the same claims, (ECF No. 92). For the reasons that follow, Defendant's Motion to Dismiss will be granted and Defendant's Motion for Partial Summary Judgment will be denied as moot.

**I. BACKGROUND**

  **A. Factual Background**

Packrite, LLC ("Packrite"), a North Carolina company, is a "specialized trade finisher for the corrugated and folding carton packaging industries." (ECF No. 69 ¶¶ 1, 4.) Graphic Packaging International, LLC ("Graphic") is a Delaware company, headquartered in Atlanta, Georgia, that manufactures "folding cartons, unbleached paperboard, and coated recycled

1

board used in packaging for the food, beverage, and consumer product industries." (*Id.* ¶¶ 2, 5.)

Beginning in or around 2012, Graphic engaged Packrite's services as an outsource vendor on an as-needed basis to assist with fulfilling customer orders and meeting Graphic's manufacturing needs. (*Id.* ¶¶ 6, 12.) In or around August 2016, Graphic requested Packrite's temporary assistance "in producing the packaging for Clorox Kitty Litter" (the "Clorox Business"). (*Id.* ¶ 15 (internal quotation marks omitted).) The Clorox Business "was part of a very large contract obtained by [Graphic,]" and Graphic "did not have the resources, equipment, or capacity to undertake the Clorox Business itself." (*Id.* ¶¶ 16, 17.) According to the Complaint, "Packrite was initially unwilling to assist" Graphic with the Clorox Business because Packrite also lacked the necessary resources to assist on such a large project and, further, such assistance would limit Packrite's ability to pursue or obtain other business opportunities. (*Id.* ¶¶ 21, 23, 25.)

The Complaint alleges that Chris Berndt, Graphic's Director of Operations, stated to Packrite that, should Packrite agree to assist Graphic with the Clorox Business, Graphic would then agree to enter into a three-year contract "under which Packrite would be the sole producer of [Graphic's] requirements of [b]eer [c]artons" (the "Beer Carton Project" or "Beer Carton Contract"). (*Id.* ¶ 27.) Chris Berndt "specifically and unequivocally" represented to Packrite that the Beer Carton Project "would result in gross revenue of approximately $10,000,000.00 per year to Packrite." (*Id.* ¶ 31.) "Based solely upon the[se] representations," Packrite agreed to assist Graphic with the Clorox Business and, in early September 2016,

Packrite began its production preparations followed by the start of actual production in November 2016. (*Id.* ¶¶ 32, 38, 40.)

In November 2016, shortly after Packrite began production on the Clorox Business, Packrite representatives met with Kristopher Dover, Vice President of Operations at Graphic. (*Id.* ¶ 46.) At that meeting, Mr. Dover informed Packrite that Chris Berndt "did not actually have the requisite authority to commit [Graphic] to the promised [ ]Beer Carton Contract when he did so in August 2016." (*Id.* ¶ 47.) Nevertheless, Mr. Dover, who did have authority to commit Graphic to the Beer Carton Contract, stated that Graphic "would honor Mr. Berndt's original promise" and that Graphic would complete the Beer Carton Project with Packrite "on the same terms promised in August 2016." (*Id.* ¶ 48.)

In early 2017, Graphic provided Packrite with an initial draft of the Beer Carton Project contract, to which Packrite proposed revisions and returned to Graphic. (*Id.* ¶¶ 54, 56; *see also id.* at 25–35, 34–42.) Packrite did not receive any further "specific response from [Graphic] regarding either its proposed changes to the draft Beer Carton Contract or the omitted quantity and price terms, although the parties continued discussions and negotiations relating to the same through approximately May 2017." (*Id.* ¶ 57.) The Complaint alleges that, by the end of February 2017, Graphic had reached the internal decision that it would not utilize Packrite's facility for the Beer Carton Project and by April 20, 2017, had developed an "Exit Plan" to move the Beer Carton Project from Packrite's facility. (*Id.* ¶¶ 93, 94.) The Complaint further alleges that from early 2017 through approximately May 2017, "representatives of [Graphic] were specifically instructed by [Graphic's] management to 'stall' Packrite on the finalization of the Beer Carton Contract." (*Id.* ¶ 58). According to the Complaint, Graphic identified tactics

3

of practicing confidentiality, limited its involvement, and withheld certain concerns with the quality of Packrite's work related to the Clorox Business as a part of its plan to exit business relations with Packrite. (*Id.* ¶¶ 95, 102.) Ultimately, the parties never executed a contract for the Beer Carton Project. (*Id.* ¶ 73.) On October 11, 2017, Packrite initiated this lawsuit in North Carolina State Court. On November 8, 2017, Graphic removed the action to this Court.

### B. Procedural Background

On August 29, 2018, this Court granted Defendant's partial motion to dismiss three of Plaintiff's claims in its original complaint ("2018 Order"). (ECF No. 19.) Specifically, this Court dismissed without prejudice Defendant's Fraudulent Misrepresentation/Inducement claim, Negligent Misrepresentation/Detrimental Reliance claim, and Unfair and Deceptive Trade Practices Act ("UDTPA") claim due to the failure of those claims to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (*Id.* at 18.) After seeking leave of this Court, Plaintiff filed its First Amended Complaint on October 15, 2018. (ECF Nos. 21, 24.) On July 9, 2019, this Court granted Defendant's Partial Motion to Dismiss in part, dismissing two of Plaintiff's claims in its First Amended Complaint ("2019 Order"). (ECF No. 39.) Specifically, this Court dismissed without prejudice Plaintiff's Fraudulent Omission claim and Negligent Misrepresentation claim due to the failure of those claims to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). (*Id.* at 13, 14, 16.) With consent from Defendant, Plaintiff filed a Second Amended Complaint on July 21, 2020. (ECF Nos. 68; 69.) Defendant now moves to dismiss Plaintiff's claims for Fraudulent Omission (Claim III) and Unfair and Deceptive Trade Practices (Claim IV), for failure to state a claim upon which relief can be granted. (ECF No. 71 at 1.) In addition,

4

Defendant has moved for partial summary judgment on the same claims. (ECF No. 92.) The Court will begin its discussion with Defendant's motion to dismiss.

## II. MOTION TO DISMISS

### A. Standards of Review: Rules 12(b)(6) and 9(b)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012) (citation and internal quotation marks omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or, second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). In considering a Rule

5

12(b)(6) motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached [to] or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted).

Where, as in this case, a party alleges fraud, the complaint must satisfy the more demanding pleading requirements of Rule 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The alleged "circumstances" which must be plead with particularity include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation omitted).

The primary purposes of Rule 9(b) are: (1) to give a defendant sufficient notice of the claim(s) against him so that he may formulate a defense; (2) to forestall frivolous lawsuits; (3) to prevent fraud actions in which all facts are learned only through discovery; and (4) to protect a defendant's goodwill and reputation. *Id.* Failure to satisfy the heightened pleading requirements of Rule 9(b) subjects a fraud claim to dismissal under Rule 12(b)(6). *Id.* at 783 n.5.

### B. DISCUSSION

#### (i) Fraudulent Omission (Claim III)

To state a claim for fraud under North Carolina law, a plaintiff must allege a "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured

6

party." *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 910 (N.C. Ct. App. 2002) (quoting *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974)).

A party may base its claim for fraud on concealment or nondisclosure. *River's Edge Pharm., LLC v. Gorbec Pharms. Servs., Inc.*, No. 1:10CV991, 2012 WL 1439133, at *22 (M.D.N.C. Apr. 25, 2012) (citing *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997)). "In such cases, the plaintiff 'must additionally allege that [defendant] had a duty to disclose material information to [it] as silence is fraudulent only when there is a duty to speak.'" *Id.* (quoting *Breeden*, 171 F.R.D. at 194). To comply with the pleading requirements of Rule 9(b) with respect to fraud by omission, a plaintiff typically will be required to allege the following with reasonable particularity:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Breeden*, 171 F.R.D. at 195. Given that Plaintiff's claim for fraud is based on non-disclosure and concealment, the Court will first determine whether Plaintiff has pled facts with sufficient particularity demonstrating that Defendant had any duty to disclose.

Typically, where commercial parties are in arm's-length negotiations, as in the instant case, there is no duty to disclose. *See RREF BB Acquisitions, LLC v. MAS Props., LLC*, No. 13 CVS 193, 2015 WL 3646992, at *10 (N.C. Super. Ct. June 9, 2015) (collecting cases), *overturned on reconsideration on other grounds*, 2015 WL 7910510 (N.C. Super. Ct. Dec. 3, 2015); *see also Comput. Decisions, Inc. v. Rouse Off. Mgmt. of N.C., Inc.*, 477 S.E.2d 262, 264-66 (N.C. Ct. App.

7

1996) (holding that when two parties were sophisticated in negotiating commercial real estate transactions, the lessor did not have a duty to disclose to the lessee that it was negotiating a lease with another party for the same premises). In such cases where no fiduciary relationship exists, however, a duty to disclose may arise when: (1) "a party has taken affirmative steps to conceal material facts from the other"; (2) "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence," *Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009) (quoting *Sidden v. Mailman,* 529 S.E.2d 266, 270-71 (N.C. Ct. App. 2000)); or (3) a party speaks about a particular matter, in which case "a full and fair disclosure as to the matters discussed" may be required, *Shaver v. N.C. Monroe Constr. Co.*, 306 S.E.2d 519, 525 (N.C. Ct. App. 1983) (holding that a company had a duty to disclose to its employee that it had stopped funding the pension plan, when an employee "inquired . . . about the status of the pension plan"). *See also Breeden*, 171 F.R.D. at 196.

Here, Graphic argues that Packrite's claim for fraudulent omission should be dismissed because it does not meet the elevated pleading standard required by Rule 9(b). (ECF No. 71 at 1-2.) Specifically, Graphic argues that Packrite "fail[s] to identify any relationship or situation giving rise to Graphic's duty to immediately inform Packrite of its decision not to enter into a contract." (*Id.* at 1.) Packrite argues, on the other hand, that it has pled sufficient facts showing that Graphic had a duty to disclose. Packrite contends that its Complaint alleges that Defendant took affirmative steps to conceal that it had decided not to enter the Beer Carton Contract, that Defendant knew of a latent defect in the subject matter of the

8

negotiations, and that, once it spoke on the Beer Carton Contract, full and fair disclosure was required even if Defendant was not initially subject to such a duty. (ECF No. 91 at 10-11.)

According to Plaintiff's Response, its Complaint alleges that Graphic took affirmative steps to conceal its decision not to award Packrite the Beer Carton Contract by: (1) offering pretextual excuses for a delay in responding to Packrite's contract draft; (2) directing Packrite to undergo MillerCoors qualification trials; and, (3) purposefully withholding substantial quality claims so that Packrite would not ascertain it would not be awarded the Beer Carton Contract. (*Id.* at 11.) Plaintiff's argument that a duty to disclose arose from Graphic taking affirmative steps to conceal its decision not to move forward with the Beer Carton Contract, however, is not plausible.

Despite Plaintiff's argument, the Complaint itself fails to set forth any pretextual excuse Graphic allegedly made to Packrite for its delay in providing Packrite with further drafts of the Beer Carton Contact. Indeed, with respect to the delay in response to Packrite's request for clarification on the status of the Beer Carton Contract, the Complaint alleges that Graphic "continued to ignore these requests or delay providing a definitive written response." (ECF No. 69 ¶ 97.) Further, the Complaint alleges that after Packrite submitted corrections to the proposed draft of the contract "[it] received no further specific response from [Graphic] regarding either its proposed changes to the draft Beer Carton Contract or the omitted quantity and price terms" even though Packrite "made numerous and continuous attempts to ascertain the status of the written Beer Carton Contract." (*Id.* ¶ 57.) Thus, the Complaint, contrary to Packrite's assertions, does not allege with any particularity any excuses, pre-textural or

otherwise, by Graphic for its the delay in responding to Packrite's continued inquiries regarding the contract and therefore cannot serve as basis for any duty to disclose.

With respect to Packrite's contention that Graphic required it to undergo the MillerCoors qualification trials to conceal the fact that it did not intend to follow through with the Beer Carton Contract, this claim is likewise not sufficient to give rise to a duty to disclose, even if true. In *Big Red, LLC v. Davines*, 31 Fed. App'x 216 (4th Cir. 2002), a case with similar facts, though not on all fours, to those in the instant case, the Fourth Circuit found no duty to disclose even when the plaintiff had expended significant sums and had taken substantial actions to its detriment in reliance on an oral agreement for an exclusive distributorship. *Id.* at 224. In *Big Red*, the parties negotiated an exclusive distribution agreement which resulted in an oral agreement that defendant would grant exclusive distribution rights to Big Red. *Id.* at 217-18. Though the parties worked on various scenarios of a written contract and had agreed on most of the terms of the oral agreements, their deal was never reduced to writing. *Id.* at 217. Believing a contract to be imminent, the plaintiff alleged that it ordered more of defendant's products, entered a long-term lease to warehouse plaintiff's products, and placed its first order as a master distributor pursuant to the unsigned agreement in the approximate of $250,000. *Id.* When the plaintiff learned through rumors some months later that defendant was in negotiations with another company, it filed suit and asserted causes of action for fraud, negligent misrepresentation, and unfair and deceptive trade practices. *Id.* at 219. The district court dismissed each of plaintiff's claims on defendant's motion to dismiss. *Id.* The plaintiff appealed only the dismissal of its unfair and deceptive trade practices claim. *Id.* The Fourth Circuit in analyzing dismissal of the unfair and deceptive claim concluded that "[defendant]

10

Case 1:17-cv-01019-LCB-LPA   Document 113   Filed 12/02/20   Page 10 of 19

had no duty to disclose to [plaintiff] its intentions regarding the outstanding negotiations between them or that it had chosen to entertain negotiations with another prospective distributor." *Id.* at 222.

Moreover, other courts in the Fourth Circuit have come to the same conclusion when deciding similar cases. *See e.g. Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (stating "in North Carolina parties to a contract do not thereby become each others' [sic] fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C." (internal quotation and citation omitted)); *see also Eli Rsch., Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 760 (M.D.N.C. 2004) (holding that, under North Carolina law, a newsletter publisher's editors had no duty to disclose their job negotiations with publisher's competitor). Even though the fraud claim in *Big Red* was based on misrepresentation rather than omission as in the instant matter, the Court finds the reasoning to be persuasive here, that under the circumstances in this case no duty to disclose arises.

Packrite argues that in addition to *Big Red* being unpublished[1], the circumstances in the instant matter are far more egregious than the circumstances in that case. (ECF No. 91 at 17–18.) This Court disagrees for several reasons. At the outset, the Court acknowledges that unpublished decisions of the Fourth Circuit are not binding. As the Fourth Circuit has observed (in published decisions), ordinarily, unpublished opinions are not accorded precedential value, but they are "entitled only to the weight they generate by the persuasiveness

---

[1] The Court finds this argument perplexing given that Packrite also provides an unpublished decision in support of its argument.

11

of their reasoning." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (internal citation and quotation omitted). Next, turning to the issue of egregiousness, first, the plaintiff in *Big Red* had an oral agreement and the parties were close to a final agreement, having resolved most of the critical terms of the contract to be written; thus, their reliance was far more reasonable than in this case. Here, though neither party argues the unreasonableness of Plaintiff's reliance, Plaintiff relied on nothing more than a promise to enter into a future contract and a first draft of an agreement where practically none of the critical terms had been resolved. Second, it appears that the plaintiff in *Big Red* expended far more funds in reliance on the oral agreement than Plaintiff in this case. Third, even though Plaintiff was upset by Graphic waiting several months to inform it that it no longer intended to enter the contract, in *Big Red* the plaintiff found out through rumor. Finally, the history of the parties' relationship as alleged in the Complaint indicates that, since 2012, Graphic had engaged Packrite on an as-needed basis only through individual purchase orders. (ECF No. 69 ¶ 12.) Plaintiff in its Complaint states that "[u]pon information and belief, it has never been, and is not today, the typical business practice of [Grapic] to enter into long-term contracts with its vendors." (*Id.*) Given the underlying facts and circumstances of this case as alleged in Plaintiff's Complaint, the Court finds that while Plaintiff's reliance on a promise to enter into this long-term contract may have been detrimental, such reliance by Packrite was unreasonable.

Packrite's contention that Graphic's withholding of quality claims gave rise to a duty to disclose likewise fails. Packrite alleges that "upon information and belief" Graphic contrived quality claims to be used as a pretextual excuse for not entering the Beer Carton Contract as a part of its plan to cease business relations with Packrite, (*Id.* ¶ 70), and withheld

12

these purported claims for months "for the specific purpose of avoiding alerting Packrite of [Graphic's] intent not to award" it the Beer Carton Contract," (*Id.* ¶ 102). However, Packrite offers no facts upon which its belief is founded. "Allegations of fraud may be made 'upon information and belief' only when the matters are particularly within the defendants' knowledge, and facts are stated upon which the belief is founded." *Breeden*, 171 F.R.D. at 197 (citing *Andrews v. Fitzgerald*, 823 F. Supp. 356, 375 (M.D.N.C.1993)). Although the nature of fraudulent omissions are more difficult to plead as compared to misrepresentations, to meet the pleading requirements of Rule 9(b), "a plaintiff may not entirely dispense with the statement of facts upon which his belief is founded." *Id.* Packrite failed to allege a factual basis giving rise to its belief that Graphic contrived and withheld its quality claims for the purpose of concealing its decision not to enter the Beer Carton Contract. This Court therefore determines that Packrite has failed to set forth any specific allegations from which a plausible inference could be drawn that a duty to disclose arose from Graphic's handling of its quality claims.

Plaintiff's next argument that a duty to disclose arose from Graphic's knowledge of a latent defect is likewise not plausible. While Plaintiff asserts that in its Complaint it explicitly pled that there was a latent defect in the subject matter of negotiations, (ECF No. 91 at 12), a review of the Complaint reveals that Plaintiff does not make any such allegation. In fact, the Complaint makes no mention of a latent defect at all. This appears little more than an effort to reframe its concealment argument which the Court has already determined does not give rise to a duty to disclose.

13

Plaintiff also asserts that the allegations in the Complaint show that Defendant was under a duty to disclose because full and fair disclosure was required after Defendant had spoken on the matter. (ECF No. 91 at 10-11.) While the Complaint references continued "representations" and "assurances" generally received from Graphic, (ECF No. 69 ¶¶ 59, 60, 63, 96, 99, 100, 101), it does not identify with any particularity the representations or assurances or when specifically they occurred. Despite Plaintiff's assertion that "[Graphic] engaged in negotiations with Packrite regarding the specifics and details of the Beer Carton Contract from mid-January 2017 through approximately May 2017," (*Id.* ¶ 53), the Complaint fails to identify any conversation or written communication between Graphic and Packrite regarding the Beer Carton Contract that took place within the relevant time frame that might support a duty to disclose. In fact, the Complaint expressly alleges that "[d]espite repeated requests for clarification on the status of the promised 'Beer Carton Contract' from Packrite, [Graphic] continued to ignore these requests or delay providing a definitive written response." (*Id.* ¶ 97.) The Court finds that the Complaint fails to plead with specificity any communication, spoken or written, made by Graphic to Packrite during the relevant period that would create a duty thereby requiring Graphic to disclose its intent not to move forward with the contract.

In further support of its contention that it has pled with sufficient specificity to satisfy Rule 9(b) a claim for fraudulent omission, Packrite argues that "the singular defect that [this] Court found in Packrite's previous pleading has been remedied in [its] Complaint." (ECF No. 91 at 9.) The Court disagrees. The Court previously dismissed Plaintiff's fraudulent omission claim for failing to specifically allege when a duty to disclose arose and failing to set forth

14

specific allegations from which a plausible inference could be drawn as to when Graphic's discussions regarding the Beer Carton Contract became fraudulent. (ECF No. 39 at 13.) Contrary to Plaintiff's assertion, its current Complaint does not remedy the flaws this Court previously articulated. Plaintiff's minor variations to its allegations, which merely shifts its allegations to a new general time reference, continues to fail to meet to meet the heightened pleading standards required by Rule 9(b).

Finally, the Complaint asserts that Graphic had "a duty, at minimum, not to misrepresent to Packrite its intentions regarding the Beer Carton Contract upon specific and repeated inquiry by Packrite regarding the same," (ECF No. 69 ¶ 103), but fails to allege with any specificity any misrepresentations that took place during the relevant time frame. Notably, Plaintiff's claim is one for omission, not misrepresentation.

Because Packrite has failed once again to meet the heightened pleading standard under Rule 9(b) related to its claim of fraudulent omission, it fails to state a plausible claim under Rule 12(b)(6) and the claim must be dismissed.

### (ii) Unfair and Deceptive Trade Practices (Claim IV)

Defendant argues that Packrite's unfair and deceptive trade practices allegations are "identical to its fraudulent omission allegations" and therefore should likewise be dismissed. (ECF No. 72 at 15.) Packrite, however, asserts that its UDTPA claim can survive independent of its fraudulent omission claim. (ECF No. 91 at 12.)

Under North Carolina's Unfair and Deceptive Trade Practices Act, unfair methods of competition and unfair or deceptive acts or practices, in or affecting commerce, are unlawful. N.C. Gen. Stat. § 75-1.1(a). North Carolina's UDTPA does not provide a definition of what

15

Case 1:17-cv-01019-LCB-LPA  Document 113  Filed 12/02/20  Page 15 of 19

constitutes an unfair or deceptive act. *Noble v. Hooters of Greenville (NC), LLC*, 681 S.E.2d 448, 452 (N.C. Ct. App. 2009) (quoting *Bernard v. Cent. Carolina Truck Sales, Inc.*, 314 S.E.2d 582, 584 (N.C. Ct. App. 1984)). However, North Carolina courts have found that "[a]n act or practice is unfair if it 'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers' . . . [and] [a]n act or practice is deceptive if it 'has the capacity or tendency to deceive.'" *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 322-23 (N.C. Ct. App. 2006) (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)).

As earlier recognized by this Court, "[t]o treat the [fraud claim and the UDTPA claim] with two different pleading standards would permit [plaintiff] to bring a disguised fraud claim without putting [defendant] on notice of the 'particular circumstances' of its [UDTPA] claim." *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) (quoting *Harrison*, 176 F.3d at 784). While this Court's statements in *Topshelf* were made in the context of an alleged fraudulent misrepresentation, the Court finds they are likewise applicable in this instance of fraud based on an alleged omission, particularly given that the UDTPA claim is based on identical allegations as the fraud claim.

A party asserting a UDTPA claim must allege: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Walker v. Fleetwood Homes of N.C., Inc.*, 653 S.E.2d 393, 399 (N.C. 2007) (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000)). Whether an act is unfair or deceptive is a question of law to be determined by the Court. *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 529 (4th Cir. 2002) (citing *Ellis v. N. Star Co.*, 388 S.E.2d 127, 131 (N.C. 1990)).

16

In its Complaint, Packrite incorporates the factual allegations constituting its fraudulent omission claim and alleges that such allegations also constitute a violation of the UDTPA. (ECF No. 69 ¶¶ 106-08.) In essence, Plaintiff argues that Defendant's alleged delay in disclosing its intent not to enter the Beer Carton Contract constitutes an unfair or deceptive trade practice.

Plaintiff argues that its Complaint "alleges substantial conduct indicating that [Graphic] actively misled Packrite and concealed these material facts for the specific purpose of inducing Packrite to continue to act in reliance upon them—all for [Graphic's] benefit." (ECF No. 91 at 14). Specifically, Plaintiff points to the following allegations:

> These deceptive acts include, without limitation, directing Packrite to undergo MillerCoors qualification trials after the point in which it is alleged that [Graphic] had definitively determined that they would not award Packrite the MillerCoors contract, (Doc. 69, ¶97), and by withholding their substantial quality claims months after [Graphic] had purportedly developed a factual basis to bring them specifically to avoid a situation where Packrite "gets word early of [Graphic's] intent to [exit]." (Doc. 69 ¶95). Further, Packrite alleges that the quality claims themselves were known to be baseless by [Graphic] and were contrived specifically for the purpose of serving as a pretextual excuse for why it would not be entering into the Beer Carton Contract with Packrite and as a mechanism by which it could wrongfully refuse to pay Packrite the amounts owed under the numerous Clorox Business purchase orders Packrite had fulfilled for [Graphic] in the Spring of 2017. (Doc. 69, ¶¶65, 70). Lastly, Packrite has alleged that [Graphic] secretly and unilaterally altered its established payment terms with Packrite, all for the express purpose of creating a "fund" out of which [Graphic] could recover its contrived quality claims contemporaneously with its exit from Packrite. (Doc. 69, ¶65, 95).

(ECF No. 91 at 14-15.) For the same reason that these allegations were not pled with sufficient specificity to satisfy its fraudulent omission claim, they likewise do not support this claim for unfair and deceptive trade practices.

Defendant's alleged conduct does not convert this contract dispute concerning the Clorox Business into a tort dispute over the Beer Carton Project. Even accepting Plaintiff's allegations as true, and resolving all inferences in its favor, Packrite's allegations surrounding the withholding of quality claims and shift in the payment terms of the Clorox work relates to the issue of damages with respect to the Clorox contract dispute and should be resolved under contract law. "A mere breach of contract, even if intentional, is not an unfair or deceptive act under Chapter 75." *Bob Timberlake Collection*, 626 S.E.2d at 323 (citing *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir.1989)). "North Carolina law 'does not permit a party to transmute a breach of contract claim into a tort or UDTPA claim for extraordinary damages because awarding punitive or treble damages would destroy the parties' bargain and force the defendant to bear a risk it never took on.'" *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 475 (E.D.N.C. 2013) (quoting *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009)). "Rather, a claimant must allege an independent, identifiable tort containing an aggravating element such as malice or recklessness in order to recover punitive damages." *Id.* at 476. Plaintiff has made no such allegations.

For this reason, as well as those discussed with respect to Packrite's failure to plead its fraudulent omission claim in compliance with Rule 9(b), the Court likewise finds that Packrite has failed to plead a plausible UDTPA claim. This Court will therefore grant Graphic's motion to dismiss Packrite's UDTPA claim.

### (iii) CONCLUSION

Plaintiff has now been given three opportunities to sufficiently plead its various fraud and UDTPA claims and has failed to do so. A contract dispute between sophisticated

18

commercial parties cannot be transformed into a tort claim because of bad business decisions resulting in loss. *Rahamankhan*, 989 F. Supp. at 475. It would be futile and prejudicial to Defendant to give Plaintiff further opportunity to pursue said claims and therefore the Court must dismiss the claims with prejudice. In light of this Court's conclusion in relation to the Motion to Dismiss, Defendant's Motion for Partial Summary Judgment related to the same claims is now moot and likewise must be dismissed.

For the reasons outlined above, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Counts III and IV of Plaintiff's Complaint (ECF No. 71) is GRANTED and Count III and Count IV of Plaintiff's Complaint are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (ECF NO. 92) is DENIED as moot.

This the 2nd day of December 2020.

/s/ Loretta C. Biggs
United States District Judge