## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PACKRITE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV1019 |
| | ) | |
| GRAPHIC PACKAGING | ) | |
| INTERNATIONAL, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge on "Plaintiff's Motion for the Imposition of Sanctions for Spoliation of Evidence" (Docket Entry 97). (See Docket Entry dated Nov. 9, 2020.) For the reasons that follow, the Court should deny the instant Motion.[1]

### INTRODUCTION

After Plaintiff commenced this carton-manufacturing-dispute-related action in state court (on October 11, 2017), Defendant removed the action to this Court and moved to dismiss Plaintiff's tort claims (but not its breach of contract and (alternative) quantum meruit claims). (See Docket Entries 1, 2, 8.) The Court

---

[1] In general, "[an] order disposing of [a] . . . motion for sanctions is undoubtedly a nondispositive matter . . . ." Kebe ex rel. K.J. v. Brown, 91 F. App'x 823, 827 (4th Cir. 2004). However, because the instant Motion seeks "a default judgment" (Docket Entry 97 at 1), the undersigned Magistrate Judge opts to enter a recommendation, see Baltimore Line Handling Co. v. Brophy, 771 F. Supp. 2d 531, 534 (D. Md. 2011) ("A motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act.").

(per United States District Judge Loretta C. Biggs) dismissed the tort claims without prejudice (and declined to remand the action to state court) (see Docket Entry 19), after which Plaintiff filed an Amended Complaint (reasserting the tort claims) (Docket Entry 24). Defendant again sought dismissal of the tort claims (see Docket Entry 26) and the Court (per Judge Biggs) dismissed two of them, i.e., the fraudulent omission and negligent misrepresentation claims (both without prejudice), but allowed the other two, i.e., the fraudulent misrepresentation and unfair/deceptive trade practices claims, to proceed (see Docket Entry 39).

Defendant then answered and asserted three breach of contract counterclaims (see Docket Entry 42), as to which Plaintiff replied (see Docket Entry 47). Around that same time, discovery commenced. (See Text Order dated Sept. 20, 2019 (adopting Docket Entry 46); see also Text Order dated June 11, 2020 (extending discovery deadline to September 1, 2020).) Near the conclusion of the discovery period (and with Defendant's consent (see Docket Entry 68)), Plaintiff filed a Second Amended Complaint (Docket Entry 69), which retains the alternative breach of contract and quantum meruit claims, drops the fraudulent misrepresentation claim (as well as the twice-dismissed negligent misrepresentation claim), and reasserts the twice-dismissed fraudulent omission claim (as well as the unfair/deceptive trade practices claim) (see id. at 15-21). In addition to answering the Second Amended Complaint (and reasserting

breach of contract counterclaims) (see Docket Entry 73; see also Docket Entry 89 (Plaintiff's Reply to Amended Counterclaims)), Defendant moved to dismiss Plaintiff's fraudulent omission claim and unfair/deceptive trade practices claim (see Docket Entry 71). A short time later, upon the close of discovery, Defendant moved for summary judgment on those two claims. (See Docket Entry 92.)

Plaintiff thereafter filed the instant Motion, "pursuant to Federal Rule of Civil Procedure 37(e)" (Docket Entry 97 at 1), asking the Court to:

> (1) Find that [] Defendant willfully-destroyed evidence;
>
> (2) Find that [] Defendant failed to take any precautions whatsoever to prevent deletion of documents by its employees;
>
> (3) Find that [] Defendant failed to fully and properly search and produce its ESI [electronically stored information] in connection with discovery in this action;
>
> (4) <u>Sanction [] Defendant by entering a default judgment in [Plaintiff's] favor as to all claims and counterclaims</u>;
>
> (5) Tax [] Defendant with [Plaintiff's] costs of th[e instant] Motion, including its reasonable attorney's fees; and
>
> (6) Grant any other form of appropriate relief which the Court deems just and proper under the circumstances.

(Id. at 1-2 (emphasis added); accord Docket Entry 98 (Memorandum in Support) at 18-19.) Defendant has responded (see Docket Entry 108;

-3-

see also Docket Entries 108-1 - 108-4 (supporting declarations)),

and Plaintiff has replied (see Docket Entry 109).[2]

DISCUSSION

As amended in 2015, the Rule invoked by Plaintiff via the

instant Motion states:

> If [ESI] that should have been preserved in the
> anticipation or conduct of litigation is lost because a
> party failed to take reasonable steps to preserve it, and
> it cannot be restored or replaced through additional
> discovery, the court:
>
> > (1) upon finding prejudice to another party from loss
> > of the [ESI], may order measures no greater than
> > necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the
> > intent to deprive another party of the [ESI's] use in
> > the litigation may:

---

[2] By Local Rule, "[t]he Court will not consider motions and
objections relating to discovery unless moving counsel files a
certificate that after personal consultation and diligent attempts
to resolve differences the parties are unable to reach an accord."
M.D.N.C. LR 37.1(a) (emphasis added). Neither the instant Motion
nor its Memorandum in Support contains such a certification. (See
Docket Entries 97, 98.) Moreover, after Defendant referenced Local
Rule 37.1(a) in seeking more time to respond to the instant Motion
(see Docket Entry 104 at 2), Plaintiff acknowledged that it had not
consulted Defendant before filing the instant Motion (see Docket
Entry 105 at 4). At that point, the undersigned Magistrate Judge
(A) concluded that, "[b]ecause [the instant] Motion almost
certainly 'relat[es] to discovery,' Local Rule 37.1(a) almost
certainly applies to [the instant] Motion" (Text Order dated Oct.
9, 2020 (quoting M.D.N.C. LR 37.1(a))), and (B) "required the
parties to engage in meaningful discussion about resolving the
matters underlying [the instant] Motion" (id.). The parties
thereafter conferred, but failed to reach agreement. (See Docket
Entry 107.) Defendant's (subsequently filed) Response to the
instant Motion does not argue for its denial pursuant to the terms
of Local Rule 37.1(a). (See Docket Entry 108 at 1-20.) Under
these circumstances, the Court should reach the merits of the
instant Motion, notwithstanding Plaintiff's untimely consultation.

(A) presume that the lost [ESI] was unfavorable to the party;

(B) instruct the jury that it may or must presume the [lost ESI] was unfavorable to the party; or

(C) dismiss the action or <u>enter a default judgment</u>.

Fed. R. Civ. P. 37(e) ("Rule 37(e)") (emphasis added).[3]

Given the plain language of Rule 37(e):

[The] Court must determine that <u>four predicate elements</u> are met under Rule 37(e) before turning to the <u>sub-elements of (e)(1) and (e)(2)</u>: (a) the existence of ESI of a type that <u>should have been preserved</u>; (b) ESI <u>is lost</u>; (c) the loss results from a party's <u>failure to take reasonable steps</u> to preserve [ESI]; and (d) [the lost ESI] <u>cannot be restored or replaced</u> through additional discovery. . . . Only if all four [of those predicate] elements are established can the Court consider sanctions under subsection (e)(1) or subsection (e)(2).

---

[3] Although the instant Motion mentions only Rule 37(e) as a basis for relief (<u>see</u> Docket Entry 97 at 1-2), the Memorandum in Support relies on authority pre-dating Rule 37(e)'s 2015 amendment to argue that "[t]his Court's inherent powers provide an additional avenue to sanction Defendant for its willful spoliation of [ESI]" (Docket Entry 98 at 14 (citing <u>Superior Performers, Inc., v. Meaike</u>, No. 1:13CV1149, 2015 U.S. Dist. LEXIS 12937, at *6-7 (M.D.N.C. Feb. 4, 2015) (unpublished))). Based on the analysis in <u>NuVasive, Inc. v. Kormanis</u>, No. 1:18CV282, 2019 WL 1171486, at *2-3 & n.4 (M.D.N.C. Mar. 13, 2019) (unpublished), <u>aff'd and adopted</u>, 2019 WL 1418145 (M.D.N.C. Mar. 29, 2019) (unpublished), the Court "should look exclusively to Rule 37(e) in resolving the instant Motion," <u>id.</u> at *3; <u>accord, e.g.</u>, <u>Newberry v. County of San Bernardino</u>, 750 F. App'x 534, 537 (9th Cir. 2018). Alternatively, (like other courts) this Court should "decline[] to order sanctions under its inherent authority even assuming that such an action would be permissible." <u>Worldpay, US, Inc. v. Haydon</u>, No. 17CV4179, 2018 WL 5977926, at *3 n.1 (N.D. Ill. Nov. 14, 2018) (unpublished); <u>accord, e.g.</u>, <u>MB Realty Grp., Inc. v. Gaston Cty. Bd. of Educ.</u>, No. 3:17CV427, 2019 WL 2273732, at *3 n.1 (W.D.N.C. May 28, 2019) (unpublished). This Recommendation "will therefore analyze the issue of whether sanctions should be imposed exclusively under . . . Rule 37(e)." <u>Worldpay</u>, 2018 WL 5977926, at *3 n.1.

-5-

_Konica Minolta Bus. Sols., U.S.A. Inc. v. Lowery Corp._, No.
15CV11254, 2016 WL 4537847, at *2-3 (E.D. Mich. Aug. 31, 2016)
(unpublished) (emphasis added).

Predicate Elements of Rule 37(e)

"The movant has the burden of proving all [four of the
predicate] elements of Rule 37(e)." _Global Hookah Distribs., Inc._
_v. Avior, Inc._, No. 3:19CV177, 2020 WL 4349841, at *11 (W.D.N.C.
July 29, 2020) (unpublished); _accord, e.g._, _Sempowich v. Tactile_
_Sys. Tech., Inc._, No. 5:18CV488, 2020 WL 6265076, at *9 (E.D.N.C.
Oct. 23, 2020) (unpublished), _appeal filed_, No. 20-2245 (4th Cir.
Nov. 20, 2020); _Shackleford v. Vivint Solar Dev. LLC_, No. 19CV954,
2020 WL 3488913, at *11 (D. Md. June 25, 2020) (unpublished); _Ball_
_v. George Washington Univ._, No. 17CV507, 2018 WL 4637008, at *1
(D.D.C. Sept. 27, 2018) (unpublished), _aff'd_, 798 F. App'x 654
(D.C. Cir. 2020); _Knight v. Boehringer Ingelheim Pharms., Inc._, 323
F. Supp. 3d 837, 844-45 (S.D.W. Va. 2018).[4]  The instant Motion
does not identify the ESI that allegedly meets Rule 37(e)'s four
predicate elements, i.e., the ESI (1) "that should have been
preserved in the anticipation or conduct of litigation," Fed. R.

---

[4] For reasons given hereafter, Plaintiff "has not demonstrated
the required showing under Rule 37(e), by even a preponderance
standard, let alone the arguably applicable 'clear and convincing'
standard," _Emilio v. Sprint Spectrum L.P._, No. 11CV3041, 2017 WL
3208535, at *10 (S.D.N.Y. July 27, 2017) (unpublished); _see also_
_Global Hookah_, 2020 WL 4349841, at *11 (concluding that "general
approach of courts in the Fourth Circuit has been to apply a 'clear
and convincing evidence standard' if the movant . . . seeks the
more extreme sanctions under Rule 37(e)(2)").

-6-

Civ. P. 37(e), (2) "is lost," id., (3) "because a party failed to take reasonable steps to preserve it," id., and (4) "cannot be restored or replaced through additional discovery," id. Plaintiff's Memorandum in Support, however, states that, "[d]ue to the . . . failure of Defendant to timely institute a litigation hold, the email folders of [its] former employees Chris Berndt and Rich Richkowski have been entirely lost." (Docket Entry 98 at 10 (emphasis added); see also id. at 3-4 ("Defendant has testified that it permanently erased all files stored in all of the email folders belonging to [] Berndt . . . . Defendant also permanently erased all files stored in the email folders belong [sic] to [] Richkowski . . . ."), 11 ("Defendant caused the wholesale deletion of the email folders of [] Berndt and [] Richkowski . . . ."), 12-13 (asserting that "all of the contents within the email folders of [] Berndt and [] Richkowski had been entirely . . . deleted"), 16 ("Defendant cause[d] the email folders of, at least, [] Berndt and [] Richkowski to be destroyed . . . .").)

As to the alleged loss of Richkowski's e-mail folders, Defendant's Response counters that, contrary to Plaintiff's above-quoted assertions, "[i]n discovery, [Defendant] produced 1,227 emails to or from Richkowski and [its] production identified Richkowski as the custodian. . . . [Defendant] still has Richkowski's emails in its possession." (Docket Entry 108 at 5-6 (citing Docket Entry 108-1, ¶ 60, and Docket Entry 108-4, ¶ 16);

-7-

<u>see also</u> <u>id.</u> at 6 ("If [Plaintiff] conducted any investigation into Richkowski's emails that [Defendant] produced, [Plaintiff] should have easily seen that [Defendant] produced his custodian email files.").)  Plaintiff's Reply does not dispute Defendant's position regarding the preservation of Richkowski's e-mail folders and thereby effectively abandons any argument for sanctions under Rule 37(e) on that front.  (<u>See</u> Docket Entry 109 at 1-10.)[5]

---

[5] Given the unrebutted showing by Defendant that, when Plaintiff asserted that (A) Defendant "permanently erased <u>all</u> files stored in the email folders belong [sic] to [] Richkowski" (Docket Entry 98 at 4 (emphasis added)), (B) "the email folders of . . . Richkowski have been <u>entirely</u> lost" (<u>id.</u> at 10 (emphasis added)), (C) "Defendant caused the <u>wholesale</u> deletion of the email folders of . . . Richkowski" (<u>id.</u> at 11 (emphasis added)), and (D) "<u>all</u> of the contents within the email folders of . . . Richkowski had been <u>entirely</u> . . . deleted" (<u>id.</u> at 12-13 (emphasis added)), Plaintiff possessed proof that conclusively contradicted those assertions, the Court should require Plaintiff and its counsel to show cause why the Court should not "determine[] that [Federal] Rule [of Civil Procedure] 11(b) has been violated," Fed. R. Civ. P. 11(c)(1), and should not "impose an appropriate sanction on [Plaintiff's] attorney, [his] law firm, [and/]or [Plaintiff] . . . for the violation," <u>id.</u>; <u>see also</u> Fed. R. Civ. P. 11(b) ("By presenting to the court a . . . paper . . . an attorney . . . certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the [paper's] factual contentions have evidentiary support . . . ."); Fed. R. Civ. P. 11(c)(1) ("Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."); Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated [Federal] Rule [of Civil Procedure] 11(b)."); Fed. R. Civ. P. 11(c)(4) ("The sanction may include nonmonetary directives[ and/or] an order to pay a penalty into court[.]"); Fed. R. Civ. P. 11(d) (exempting "discovery requests, responses, objections, and motions under [Federal] Rules [of Civil Procedure] 26 through 37" from Federal Rule of Civil Procedure 11, but not briefs or memoranda supporting such motions).

-8-

Concerning the loss of Berndt's e-mail folders, Defendant's Response states, in pertinent part:

1) "[o]n July 7, 2017, Berndt left the employment of [Defendant]" (Docket Entry 108 at 6 (citing Docket Entry 108-2, ¶ 8); see also id. ("[Berndt] was not fired and his departure had nothing to do with [Plaintiff]. [He] resigned from [Defendant] to take a position . . . in Oshkosh, Wisconsin. [His] daughter suffered from a spinal tumor and he took th[a]t position . . . so that she could receive treatment in Wisconsin." (internal citations omitted) (citing Docket Entry 108-2, ¶¶ 8-11, 14)));[6]

_____

[6] Plaintiff's Memorandum in Support (filed on September 24, 2020) declares without citing any record evidence that "[i]t is not unreasonable to suspect that the termination of [] Berndt's employment with Defendant may have been in some way related to the pertinent facts of the present case." (Docket Entry 98 at 17.) In connection with Defendant's Response, Berndt swore that, on August 25, 2020, he "specifically told [Plaintiff's counsel] that [Berndt] resigned from [Defendant] on good terms and that [he] left [its] employment due to [a] family medical issue with [his] daughter." (Docket Entry 108-2, ¶ 20.) Plaintiff's Reply does not deny receipt of that information 30 days before Plaintiff declared (without any cited basis) that the record supported an inference that Berndt lost his job with Defendant due to "pertinent facts of the present case" (Docket Entry 98 at 17). (See Docket Entry 109 at 1-10.) Under these circumstances, it is not unreasonable to suspect that Plaintiff's counsel improperly "certifie[d] that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . [that] factual contention[ about Berndt's departure from employment with Defendant] ha[d] evidentiary support," Fed. R. Civ. P. 11(b). Accordingly, the Court should require Plaintiff and its counsel to show cause why the Court should not "determine[] that [Federal] Rule [of Civil Procedure] 11(b) has been violated," Fed. R. Civ. P. 11(c)(1), and why the Court should not "impose an appropriate sanction on [Plaintiff's] attorney, [his] law firm, [and/]or [Plaintiff] . . . for the violation," id.

2) "[c]onsistent with its corporate email policy, on July 12, 2017, five days after Berndt's employment with [Defendant] ended, [its] information technology department disabled Berndt's custodian files on its servers, which deleted his custodian email files" (id. at 7 (citing Docket Entry 108-1, ¶ 54, and Docket Entry 108-3, ¶ 4); see also id. at 5 ("[Defendant] has a company policy that when an employee leaves [its] employment, [it] disables that employee's email which has the effect of erasing the employee's custodian files." (citing Docket Entry 108-3, ¶ 4)), 7 ("Disabling [Berndt's] custodian files did not delete or destroy any emails that [he] had previously sent to other [of Defendant's] employees. . . . Although [his] custodian files were deleted in the ordinary course of business following his departure, his emails (sent and received) still existed in other locations . . . ." (citing Docket Entry 108-3, ¶ 4, and Docket Entry 108-1, ¶ 54)));

3) "[o]n September 22, 2017, [Plaintiff's] counsel[] sent a letter to [Defendant] requesting that it preserve documents related to [Plaintiff]" (id. at 4 (citing Docket Entry 108-1, ¶ 19); see also Docket Entry 98-1 at 4-6 (referenced letter));[7]

---

[7] "[R]ule [37(e)] does not create a duty to preserve ESI. It recognizes the common-law duty to preserve relevant information when litigation is reasonably foreseeable." EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc., No. 3:12CV463, 2018 WL 1542040, at *12 (M.D. Tenn. Mar. 29, 2018) (unpublished), aff'd in relevant part, 2018 WL 3322305 (M.D. Tenn. May 14, 2018) (unpublished); see also Fed. R. Civ. P. 37 advisory comm. notes, 2015 amend., subdiv. (e) (confirming that Rule 37(e) "does not
(continued...)

-10-

4) "[o]n October 5, 2017, [Defendant] instituted a litigation hold of the people [Defendant] believed had information related to the defective carton issue" (Docket Entry 108 at 4 (citing Docket Entry 108-1, ¶ 23 & Exh. F); see also id. at 5 (listing five people as to whom "litigation hold" applied on "October 5, 2017" (citing Docket Entry 108-1, ¶ 27)));[8]

---

[7](...continued)
apply when [ESI] is lost before a duty to preserve arises"). "A variety of events may alert a party to the prospect of litigation. Often these events provide only limited information about th[e] prospective litigation, however, so that the scope of [ESI] that should be preserved may remain uncertain." Fed. R. Civ. P. 37 advisory comm. notes, 2015 amend., subdiv. (e). According to Plaintiff, "Defendant's obligation to preserve ESI [including Berndt's e-mails] arose upon [its] receipt of [a l]etter from [Plaintiff's] representative Kevin Brown on May 26, 2017." (Docket Entry 98 at 7; see also Docket Entry 98-1 at 1-3 (Brown's letter).) Defendant has disputed that a preservation duty stemmed from Brown's letter (particularly encompassing Berndt's e-mails), as it "does not allege any wrongdoing by [Defendant], does not make a demand of [Defendant], makes no claim of misrepresentations by [Defendant], does not state any facts that give rise to actionable legal claims, and certainly does not make any claim of fraud, negligence, or unfair or deceptive trade practices." (Docket Entry 108 at 12 (citing Docket Entry 98-1 at 1-3).) Because (for reasons outlined in the discussion that follows above) the record does not reflect that (A) ESI lost after May 26, 2017 (and, in particular, Berndt's relevant e-mails) "cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e), (B) Defendant "acted with the intent to deprive [Plaintiff] of [such ESI's] use in th[is] litigation," Fed. R. Civ. P. 37(e)(2), and/or (C) the loss of such ESI has "prejudice[d Plaintiff]," Fed. R. Civ. P. 37(e)(1), the Court need not decide definitively whether and to what extent Brown's letter triggered an ESI preservation duty for Defendant.

[8] The term "defective carton issue" (Docket Entry 108 at 4) refers to the following: "On November 22, 2016, [Defendant] notified [Plaintiff] that [Defendant] had a claim for defective Church & Dwight cat litter cartons in the amount of $189,813.70. On May 17, 2017, [Defendant] notified [Plaintiff] that [Defendant]
(continued...)

5) "[o]n October 11, 2017, [in-house counsel for Defendant] spoke to [Plaintiff's] lawyer" (<u>id.</u> at 4) and "learned that [Plaintiff's] claims went beyond the issue of defective [Church & Dwight and Chlorox] cartons [previously produced by Plaintiff for Defendant] and that [Plaintiff] was going to make [tort] claims based on the failed negotiation of an unexecuted contract for the [future] production of MillerCoors cartons" (<u>id.</u>);

6) on "October 11, 2017," Defendant expanded the litigation hold to include seven other people (<u>id.</u> at 5 (citing Docket Entry 108-1, ¶ 27); <u>see also</u> <u>id.</u> (documenting further expansion(s) of litigation hold, "such that by December 6, 2017, a total of 28 [people] . . . were on the litigation hold" and stating that, "[o]nce a[n ] employee [of Defendant] is put on a litigation hold, the employee's custodian files cannot be deleted or destroyed and they are preserved (with appropriate backups) until removed from the litigation hold" (citing Docket Entry 108-1, ¶¶ 24-26 & Exhs. G-L, and Docket Entry 108-3, ¶¶ 3, 8)));[9]

---

[8](...continued)
had quality claims totaling $413,502.64 for defective cartons [Plaintiff] produced for [Defendant] on the Church & Dwight and Clorox accounts . . . ." (<u>Id.</u> at 2 (internal citation omitted); <u>see also</u> <u>id.</u> at 3 ("[Plaintiff's] chief operating officer wrote a letter [to Defendant denying responsibility for] the defective cartons on . . . May 26, 2017.").)

[9] Plaintiff's Reply does not dispute the above-quoted representation by Defendant regarding the operation of its litigation hold. (<u>See</u> Docket Entry 109 at 1 (noting, without contesting, Defendant's report that its "employees, once placed on
(continued...)

-12-

7) "to [Berndt's] recollection, any internal emails that he sent about [Plaintiff] would have been to one or more of the people on the litigation hold list" (id. at 7 (citing Docket Entry 108-2, ¶¶ 17-18); see also id. ("Berndt did not have draft emails or other documents that were destroyed when his computer was disabled." (citing Docket Entry 108-2, ¶ 16))); and

8) "[Defendant] produced [to Plaintiff during discovery] 632 of Berndt's emails using [other e-mail] custodians' records" (id. (citing Docket Entry 108-1, ¶ 54)).

Plaintiff's Reply offers no evidence to contest the foregoing showing that: (A) Berndt left his job with Defendant for reasons unrelated to Plaintiff; (B) Defendant deleted Berndt's e-mail folders pursuant to its policy for departing employees; (C) shortly after receiving a (non-specific) preservation letter, Defendant began placing litigation holds on the e-mail folders of employees it perceived as possessing potentially relevant information; (D) when Plaintiff's counsel advised Defendant's in-house counsel about the scope of Plaintiff's claims, Defendant extended the litigation hold to more employees; (E) Berndt's e-mails about Plaintiff with other of Defendant's employees likely would have

<hr>

⁹(...continued)
a litigation hold, were not able to manually delete their [ESI]" (emphasis omitted)).) That concession defeats the instant Motion's request for a finding that "Defendant failed to take <u>any</u> precautions <u>whatsoever</u> to prevent deletion of documents by its employees" (Docket Entry 97 at 1 (emphasis added)).

-13-

included at least one of the employees subject to a litigation hold; and (F) Defendant served Plaintiff in discovery with 632 of Berndt's e-mails located in e-mail folders of other employees of Defendant.  (<u>See</u> Docket Entry 109 at 1-10.)  Instead, the Reply simply speculates that some of Berndt's e-mails about Plaintiff could have gone unrecovered if "(1) [they] were [not] shared with the same custodians that would eventually be placed on a litigation hold by [Defendant or] (2) [they were so shared but] were [] otherwise lost or destroyed prior to such custodians being placed on a litigation hold" (<u>id.</u> at 5; <u>accord</u> <u>id.</u> at 7).

That approach dooms the instant Motion, because "[a] successful claim for spoliation of [ESI] cannot be premised on mere speculation on the existence of such [unrecovered ESI]." <u>Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.</u>, No. 18-3403, 2020 WL 1809191, at *5 (D. Md. Apr. 9, 2020) (unpublished) (internal quotation marks omitted); <u>see also</u> <u>ACT, Inc. v. Worldwide Interactive Network, Inc.</u>, No. 3:18CV186, 2020 WL 4016241, at *5 (E.D. Tenn. July 16, 2020) (unpublished) ("[S]peculation is not sufficient to justify spoliation sanctions.").  To the contrary, as "[t]he moving party[, Plaintiff] must [] show that the lost ESI cannot be 'restored or replaced through additional discovery.'" <u>Morgan Art Found. Ltd. v. McKenzie</u>, Nos. 18CV4438, 18CV8231, 2020 WL 5836438, at *18 (S.D.N.Y. Sept. 30, 2020) (unpublished) (quoting Fed. R. Civ. P. 37(e)); <u>see also</u> <u>Garrison v. Ringgold</u>, No. 19CV244,

-14-

2020 WL 6537389, at *6 (S.D. Cal. Nov. 6, 2020) (unpublished) ("The moving party has the burden to show that the evidence was in fact lost and 'cannot be restored or replaced through additional discovery.'" (quoting Fed. R. Civ. P. 37(e))). "Ordinarily, if [one person's deleted] emails were sent to or from other [people], those emails are not permanently lost or unrecoverable because they can be replaced in discovery by obtaining them from those other [people]." Morgan Art, 2020 WL 5836438, at *18 (internal quotation marks omitted); see also Fed. R. Civ. P. 37 advisory comm. notes, 2015 amend., subdiv. (e) ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere.").

As a result, to secure relief "under Rule 37(e), [Plaintiff] must demonstrate that [some of Berndt's deleted e-mails relevant to this dispute remained] irretrievable from another source, including other custodians." Sempowich, 2020 WL 6265076, at *10. Plaintiff has not carried that burden; rather, after Defendant presented evidence (A) that, "most likely, any internal emails that [Berndt] sent or received about [Plaintiff] would have been to [or from] one or more of the people on the litigation hold list" (Docket Entry 108-2, ¶ 18), and (B) that, "by using other [e-mail] custodians that [] Berndt communicated with, [Defendant] produced in discovery 632 emails to/from [] Berndt" (Docket Entry 108-1, ¶ 54), Plaintiff (as quoted above) countered with only speculation that Defendant

-15-

might not have recovered all of Berndt's e-mails about Plaintiff (see Docket Entry 109 at 5). Put another way, Plaintiff "has failed to prove that other responsive documents ever existed. Because [Plaintiff] has failed to offer persuasive evidence to show that the ESI [at issue] was not 'restored or replaced through additional discovery' – namely, [Defendant's] production of the emails [of other employees] – the Court [should] den[y the instant] Motion []." Fiteq Inc. v. Venture Corp., No. 13CV1946, 2016 WL 1701794, at *3 (N.D. Cal. Apr. 28, 2016) (unpublished) (all-cap font omitted) (quoting Fed. R. Civ. P. 37(e)); see also Johnson v. L'Oreal USA, No. 18CV9786, 2020 WL 5530022, at *3 (S.D.N.Y. Sept. 15, 2020) (unpublished) (refusing to grant relief under Rule 37(e), where the defendant "replaced any missing data with supplemental collections from [other] custodians").[10]

---

[10] As detailed above, in identifying ESI that might satisfy the predicate elements of Rule 37(e), the Memorandum in Support focuses on Berndt's and Richkowski's e-mail folders. (See, e.g., Docket Entry 98 at 3-4 (declaring, under heading "Relevant Facts and Procedure" (id. at 2 (emphasis and all-caps font omitted)), that Defendant "permanently erased" Berndt's and Richkowski's e-mail folders, without referencing any other specific ESI allegedly lost due to Defendant's (in)action (emphasis omitted)).) The lone exception appears beneath the subheading "Defendant Failed to Take Reasonable Steps to Preserve, Search for, and Retrieve Relevant ESI" (id. at 9 (emphasis omitted)). The text that follows that subheading likewise dwells upon Berndt's and Richkowski's e-mail folders (see id. at 10-11), but also includes one line stating that "[Joseph] Yost testified it is a regular practice of his to delete his entire email folder every thirty to sixty days" (id. at 11). Immediately thereafter, however, Plaintiff disclaimed reliance on any loss of Yost's e-mail as a basis for the instant Motion. (See id. ("Defendant has plainly failed to satisfy its obligations in at (continued...)

<u>Additional Elements of Rule 37(e)(1) & (2)</u>

Alternatively, "even if Plaintiff [did] meet all [four] of the mandatory predicate elements of Rule 37(e), Plaintiff cannot show that [Defendant] acted with an 'intent to deprive' Plaintiff of use of [any lost] ESI in this case – another requirement to obtain serious sanctions like those Plaintiff seeks." <u>Johnson</u>, 2020 WL 5530022, at *3 (quoting Fed. R. Civ. P. 37(e)(2)); <u>see also</u> Fed. R.

---

[10](...continued)
least two ways; (1) Defendant caused the wholesale deletion of the email folders of [] Berndt and [] Richkowski, and (2) [its] method of relying on individual employees for the search and retrieval of ESI, with no measures to prevent spoliation, are inadequate and unreasonable.").) At a minimum, the Memorandum in Support does not attempt to prove by a preponderance of the evidence that, after May 26, 2017, Yost deleted any e-mails about matters disputed in this case, which "cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e), such as from e-mail folders of other of Defendant's employees. (<u>See</u> Docket Entry 98 at 1-19 (failing to address that issue); <u>see also</u> Docket Entry 85-1 (e-mails between Yost and others employed by Defendant, which Plaintiff acquired during discovery and submitted to bolster its opposition to Defendant's Motion for Protective Order (Docket Entry 77), which sought to block or to limit Yost's deposition).) The Court thus need go no farther on this front, <u>see, e.g.</u>, <u>Nickelson v. Astrue</u>, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the [C]ourt will not address them."), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 21, 2009), notwithstanding Plaintiff's belated attention to the alleged loss of Yost's e-mails in its Reply (<u>see, e.g.</u>, Docket Entry 109 at 1 ("[Defendant] now asserts that the email folders of [] Richkowski were not deleted . . . . [T]he same cannot be said for the email folders of . . . Yost . . . [which] were permanently deleted during a time at which a duty to preserve evidence existed.")), <u>see, e.g.</u>, <u>Tyndall v. Maynor</u>, 288 F.R.D. 103, 108 (M.D.N.C. 2013) ("Members of this Court . . . have consistently held that reply briefs may not inject new grounds and that an argument that was not contained in the main brief is not before the Court." (internal brackets, ellipses, and quotation marks omitted)).

-17-

Civ. P. 37(e)(2) ("[O]nly upon finding that the party acted with the intent to deprive another party of [lost ESI's] use in the litigation may [the court] . . . enter a default judgment." (emphasis added)). Again, "[m]ere speculation is not enough – Plaintiff must produce evidence of [Defendant's] intent to deprive Plaintiff of [the lost] ESI in this litigation." Johnson, 2020 WL 5530022, at *4. Here, Plaintiff has not provided an "evidentiary basis for [its] allegations that [Defendant] acted with an intent to deprive Plaintiff of relevant ESI in this litigation," id.

In that regard, Plaintiff's Memorandum in Support asserts an "entitle[ment] to a dispositive sanction because Defendant willfully and knowingly destroyed the ESI of [] Berndt and [] Richkowski with the intent to deprive [Plaintiff] of favorable evidence." (Docket Entry 98 at 11-12.) As documented above, Defendant has debunked any allegation that it destroyed (willfully or otherwise) Richkowski's e-mail folders. "Nor is there any other evidence of bad faith [as to Berndt]. First, there is no indication that Defendant destroyed [his e-mail folders] in a manner inconsistent with its normal [e-mail]-retention policies. Second, this is not the sort of case where the unpreserved [ESI] clearly would have resolved a crucial issue in the case." ML Healthcare Servs., LLC v. Publix Super Mkts., Inc., 881 F.3d 1293, 1308 (11th Cir. 2018) (affirming denial of spoliation sanctions).

-18-

Indeed, under the sub-heading "Defendant Acted Willfully in Failing to Preserve, Search for, and Retrieve ESI, with Intent to Deprive [Plaintiff] of Evidence Favorable to its claims and contradictory to Defendant's Claims" (Docket Entry 98 at 11 (inconsistent capitalization in original) (emphasis omitted)),[11] to the extent Plaintiff pointed to any record support, it cited issues involving Richkowski (whose e-mail folders remain preserved), not Berndt (see id. at 11-14).[12] As to Berndt, Plaintiff evidently

_____

[11] The sub-heading quoted above – like another in the Memorandum in Support (see Docket Entry 98 at 9 ("Defendant Failed to Take Reasonable Steps to Preserve, Search for, and Retrieve Relevant ESI" (emphasis omitted))) – echoes the instant Motion's request for a "[f]ind[ing] that [] Defendant failed to fully and properly search and produce its ESI in connection with discovery" (Docket Entry 97 at 1; see also Docket Entry 98 at 4 ("Defendant never conducted any global search whatsoever of its electronic records in an effort to comply with Plaintiff's discovery requests . . . ." (emphasis omitted))). The Court should deny that aspect of the instant Motion, because it improperly attempts to shoe-horn issues regarding Defendant's production of ESI (a subject for a motion to compel under Federal Rule of Civil Procedure 37(a)) with issues regarding Defendant's preservation of ESI (a subject for a motion for sanctions under Rule 37(e)). See Lee v. Belvac Prod. Mach., Inc., No. 6:18CV75, 2020 WL 3643133, at *4 (W.D. Va. July 6, 2020) (unpublished) ("Rule 37(e) is not designed to sanction a party for failing to meet their discovery obligations by refusing to turn over discoverable documents – it is designed to sanction a party who wrongfully destroys evidence (or allows it to be destroyed). . . . If [the plaintiff] felt [the defendant] was failing to uphold its discovery obligations, [the plaintiff] should have properly addressed such a failing during discovery, rather than attempt to style such a failing as 'spoliation' shortly before trial."), appeal filed, No. 20-1805 (4th Cir. July 24, 2020).

[12] Plaintiff's Memorandum in Support does not argue that any loss of Yost's e-mails resulted from Defendant's "intent to deprive [Plaintiff] of the [] use [of such e-mails] in the litigation," Fed. R. Civ. P. 37(e)(2). (See Docket Entry 98 at 11-14 (making no
(continued...)

-19-

would have the Court find that Defendant "inten[ded] to deprive [Plaintiff] of the [] use [of Berndt's e-mails] in th[is] litigation," Fed. R. Civ. P. 37(e)(2) – or (in the sloppy short-hand of the instant Motion's relief request) "willfully-destroyed [such ESI]" (Docket Entry 97 at 1) – because (A) Berndt "was named in [a] May 2017 [l]etter [from an employee of Plaintiff to an employee of Defendant] as being responsible for first making the representations [about the manufacture of MillerCoors cartons] that serve as the basis for [Plaintiff's tort] claims" (Docket Entry 98 at 12), but (B) "Defendant failed to institute a litigation hold until October 2017, by which time all of the contents within [Berndt's] email folders . . . had been entirely . . . deleted" (id. at 12-13 (emphasis omitted)).  In other words, Plaintiff has invited the Court to find that Defendant possessed a bad-faith mens rea of "intent to deprive [Plaintiff] of the [] use [of Berndt's e-mails] in the litigation," Fed. R. Civ. P. 37(e)(2), from Defendant's actus reus of deleting Berndt's e-mail folders when he left Defendant's employment in July 2017, consistent with its standard policy of deleting departing employees' e-mail folders.

---

[12](...continued)
reference to Yost in subsection contending that "Defendant acted willfully in failing to preserve, search for, and retrieve ESI, with intent to deprive [Plaintiff] of evidence favorable to its claims and contradictory to Defendant's claims" (emphasis omitted) (standard capitalization applied)); see also Docket Entry 109 at 1-10 (offering no argument attributing any loss of ESI to Defendant's "intent to deprive [Plaintiff] of th[at ESI's] use in the litigation," Fed. R. Civ. P. 37(e)(2)).)

-20-

The Court should reject that invitation, because the record fails to establish that Defendant's decision to follow that policy in early July 2017 (if deemed incorrect in light of the emergence of a dispute with Plaintiff in late May 2017) resulted not from negligence (or even gross negligence) but from Defendant's "intent to deprive [Plaintiff] of the [] use [of Berndt's e-mails] in th[is] litigation," id. See Grant v. Gusman, Civ. No. 17-2797, 2020 WL 1864857, at *12 (E.D. La. Apr. 13, 2020) (unpublished) ("Evidence of destruction as part of a regular course of conduct is insufficient to support a finding of intent to deprive, as required by Rule 37(e)(2). Accordingly, because [the p]laintiff failed to present any evidence that [the d]efendant[] did anything more than a negligent continuation of its routine policy, the most severe measures under Rule 37(e)(2) . . . are not permissible." (internal brackets, footnote, and quotation marks omitted)); Stovall v. Brykan Legends, LLC, No. 17-2412, 2019 WL 480559, at *4 (D. Kan. Feb. 7, 2019) (unpublished) ("[The p]laintiff asserts bad-faith is demonstrated here simply by [the] defendant's failure to preserve the [ESI] after receiving multiple notices of its obligation to preserve evidence. [The p]laintiff has cited no support for this theory that [the] defendant's failure shows the required culpable state of mind. . . . The court is not convinced that [the] defendant's negligence – even recklessness – in not taking steps to preserve the [ESI] . . . and in allowing the normal [deletion]

-21-

policy . . . to proceed unimpeded rises to the stringent 'intent' requirement set forth in the amended Rule 37(e)." (some internal quotation marks omitted)); see also Courser v. Michigan House of Representatives, No. 19-1840, 2020 WL 5909505, at *20 (6th Cir. Oct. 6, 2020) (unpublished) ("As for [Rule 37](e)(2), after the 2015 amendment, [the plaintiff] had to show that the [d]efendants had intent to deprive him of the [lost ESI's] use. A showing of negligence or even gross negligence will not do the trick." (internal brackets and quotation marks omitted)).[13]

In sum:

> Because Plaintiff [failed to] make the [required] showing of intent under Rule 37(e)(2), sanctions – particularly a severe sanction like [the instant Motion requests] – would be improper. If Plaintiff is entitled to any relief at all – which[, in light of its failure to satisfy the predicate elements of Rule 37(e), it] is not – it would be limited to curative measures under subsection (1) of Rule 37(e), and only if Plaintiff can show prejudice.

Johnson, 2020 WL 5530022, at *4; see also Courser, 2020 WL 5909505, at *20 ("[The plaintiff] failed to prove prejudice, so the district court did not abuse its discretion in denying the Rule 37[(e)(1)] motion."); Sempowich, 2020 WL 6265076, at *9 (ruling that, to

---

[13] "Moreover, Plaintiff [has] provide[d] no reason to believe that [Berndt's e-mail folders] would have actually shown [] things [favorable to Plaintiff] . . . . Failure to preserve such speculative evidence does not raise the specter of bad faith in the same way that a failure to preserve evidence of a specific, crucial event in a case might." ML Healthcare, 881 F.3d at 1309.

prevail under Rule 37(e)(1), "moving party must first establish" four predicate elements and "must then demonstrate prejudice").[14]

Although the Memorandum in Support implies that Plaintiff suffered prejudice because it "voluntarily abandoned certain of its claims in its filing of the Second Amended Complaint" (Docket Entry 98 at 12 n.4) and cannot "use [] untold numbers of documents that may well have been highly-relevant in defense of [Defendant's summary judgment m]otion" (id. at 18 (emphasis omitted)), Plaintiff has not adequately connected its abandonment of any claims or its challenges in staving off summary judgment to the deletion of

---

[14] The text of Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37 advisory comm. notes, 2015 amend., subdiv. (e)(1). Instead, Rule 37(e)(1) "leaves judges with discretion to determine how best to assess prejudice in particular cases." Id. That discretion permits judges to "[r]equir[e] the party seeking curative measures to prove prejudice . . . in [some] situations," id., including where "the abundance of preserved information may appear sufficient to meet the needs of all parties," id. This case presents just such a situation, particularly in light of the large volume of Berndt's e-mails recovered from the e-mail folders of other employees of Defendant and produced in discovery (as detailed above). Additionally, as other courts have recognized, "in order to evaluate whether [Plaintiff] has been prejudiced, the [C]ourt must have some evidence regarding the particular nature of the missing ESI," Worldpay, US, Inc. v. Haydon, No. 17CV4179, 2018 WL 5977926, at *5 (N.D. Ill. Nov. 14, 2018) (unpublished) (internal quotation marks omitted); see also Fed. R. Civ. P. 37 advisory comm. notes, 2015 amend., subdiv. (e)(1) ("An evaluation of prejudice from the loss of [ESI] necessarily includes an evaluation of the [lost ESI's] importance in the litigation."), and the Court, "within [its] discretion, [may] require some proof that [the missing ESI] would have corroborated Plaintiff's claims," Ungar v. City of New York, 329 F.R.D. 8, 16 (E.D.N.Y. 2018). Given those considerations, in this case, the Court properly may "plac[e] the burden of proof as to prejudice on Plaintiff." Id.

-23-

Berndt's e-mail folders (or the loss of any other discrete category of ESI). (<u>See</u> Docket Entry 98 at 1-19; Docket Entry 109 at 1-10.) Plaintiff therefore "has failed to meet [its] burden of demonstrating *how* [it] has been prejudiced, particularly when [Defendant] has gone to great lengths to cure any [deletion-related] deficiencies," <u>Johnson</u>, 2020 WL 5530022, at *4 (emphasis in original), "by using other [e-mail] custodians that [] Berndt communicated with[ to] produce[] in discovery 632 emails to/from [] Berndt" (Docket Entry 108-1, ¶ 54). "Plaintiff is not entitled to every single document that could possibly have existed. Discovery must be reasonable, not perfect. . . . Defendant has provided reasonable discovery through the above-described supplemental data collection and search efforts." <u>Johnson</u>, 2020 WL 5530022, at *3.[15]

---

[15] "Moreover, prejudice is less acute when [as here] there are sources from which at least some of the allegedly spoliated evidence can be obtained and when the party seeking discovery can obtain extrinsic evidence of the content of at least some of the deleted information from other documents, deposition testimony, or circumstantial evidence." <u>In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.</u>, 299 F.R.D. 502, 523 (S.D.W. Va. 2014) (internal brackets, ellipsis, and quotation marks omitted); <u>see also</u> <u>Snider v. Danfoss, LLC</u>, No. 15CV4748, 2017 WL 2973464, at *7 (N.D. Ill. July 12, 2017) (unpublished) (observing that prospect of prejudice to the plaintiff from "deletion of . . . emails [wa]s minimized by the [defendant's] production of [recovered] emails as well as the [option of] deposi[ng] . . . witnesses"), <u>recommendation adopted</u>, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017) (unpublished). Relatedly, as Defendant has highlighted, "Berndt himself would be an excellent source of information to determine if any [relevant] emails were [still missing] and, if so, the information contained in [them]." (Docket Entry 108 at 16.) However, "after noticing Berndt's deposition, [Plaintiff] cancelled Berndt's deposition two days before it was scheduled to occur. . . . [Plaintiff's decision to] (continued...)

-24-

Notably, to the extent it discusses prejudice associated with <u>particular</u> lost ESI in the context of arguing for sanctions under Rule 37(e), the Memorandum in Support concentrates <u>not</u> on the deletion of Berndt's e-mail folders, but instead on the <u>disproved</u> allegation that Defendant "deleted the entirety of [] Richkowski's email folders after the date upon which it admits to . . . anticipati[ng ] litigation" (Docket Entry 98 at 13; <u>see also</u> <u>id.</u> at 13-14 ("[A]s the remainder of [] Richkowski's emails have been permanently deleted by [Defendant], there is no telling what other evidence favorable to [Plaintiff's] position [it] may have obtained. . . . [T]he email folders of [] Richkowski contained highly-relevant documents contradictory to Defendant's claims against [Plaintiff], and Defendant deleted [his] email folders in their entirety after being under an obligation . . . to preserve them.").) Regarding Berndt, the Memorandum in Support merely voices a generic concern that Plaintiff lacks access to "untold numbers of documents deleted by Defendant from [Berndt's] email folders" (<u>id.</u> at 14), and proffers an "inference that these lost documents were favorable to [Plaintiff]" (<u>id.</u>), grounded on the faulty premise – mislabeled as a "fact" - that "Defendant destroyed

---

[15](...continued)
pass[] on that opportunity in discovery[] bel[ies its] argument that [any unrecovered e-mails to/from] Berndt ha[d] vital information related to this dispute." (<u>Id.</u>)

-25-

[ESI] from [] Richkowski's email folders [that] expressly contradict[ed] the bases for Defendant's counterclaims" (<u>id.</u>).

This sort of (ill-founded) "speculation that [Plaintiff has] suffer[ed] harm is not enough." <u>Johnson</u>, 2020 WL 5530022, at *4; <u>see also</u> <u>Pugh-Ozua v. Springhill Suites</u>, No. 18CV1755, 2020 WL 6562376, at *4 (S.D.N.Y. Nov. 9, 2020) (unpublished) ("[The p]laintiff has not provided any evidence – aside from her own speculation – to support her argument that [unrecovered] text messages and emails would have corroborated her claims. Accordingly, [the magistrate judge] did not commit clear error in declining to grant sanctions under Rule 37(e)(1) . . . ."); <u>MB Realty Grp., Inc. v. Gaston Cty. Bd. of Educ.</u>, No. 3:17CV427, 2019 WL 2273732, at *5 (W.D.N.C. May 28, 2019) (unpublished) ("Speculative or generalized assertions that the missing [ESI] would have been favorable to the party seeking sanctions are insufficient." (internal brackets and quotation marks omitted)).[16] To the contrary, even assuming the record shows a large "volume of

_____

[16] Plaintiff also alleged that Defendant's "destruction of relevant ESI . . . is considerably prejudicial" (Docket Entry 98 at 16), in arguing that "[t]his Court's inherent powers provide an additional avenue to sanction Defendant" (<u>id.</u> at 14), but (in doing so) Plaintiff once more merely speculated (equivocally) that "untold numbers of other relevant documents have very likely been lost due to Defendant's failure to make any reasonable effort whatsoever to ensure that its employees complied with requests for documents" (<u>id.</u> at 16 (emphasis omitted)). "A successful claim for spoliation of evidence cannot be premised on mere speculation on the existence of such evidence." <u>MB Realty</u>, 2019 WL 2273732, at *5 (internal quotation marks omitted).

-26-

[ESI] was lost or destroyed, and the key position[] held by the employee[] whose [ESI is] missing," <u>In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.</u>, 299 F.R.D. 502, 523 (S.D.W. Va. 2014), "to support an award of sanctions . . . , [Plaintiff] must demonstrate to the [C]ourt with some precision that unique and relevant [ESI] has been lost, and this loss creates an evidentiary hurdle to [Plaintiff] in presenting the essentials of [its] case[]," <u>id.</u>  Plaintiff, however, "ha[s] not provided the [C]ourt with any concrete evidence of prejudice," <u>id.</u> at 524, and thus Plaintiff cannot receive relief under Rule 37(e)(1).[17]

_____

[17] In its Reply, Plaintiff (for the first time) contended that "'[p]rejudice may be presumed when the spoliating party acted in bad faith <u>or in a grossly negligent manner</u>.'" (Docket Entry 109 at 7-8 (emphasis added) (quoting <u>Ottoson v. SMBC Leasing & Fin., Inc.</u>, 268 F. Supp. 3d 570, 581 (S.D.N.Y. 2017), in turn quoting <u>Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC</u>, 685 F. Supp. 2d 456, 467 (S.D.N.Y. 2010) (relying on <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 109 (2d Cir. 2002)), <u>abrogated in part</u>, <u>Chin v. Port Auth. of N.Y. & N.J.</u>, 685 F.3d 135, 162 (2d Cir. 2012) ("reject[ing] the notion [adopted in <u>Pension Comm.</u>, 685 F. Supp. 2d at 464-65,] that a failure to institute a 'litigation hold' constitutes gross negligence <i>per se</i>" (italics in original)).)  That contention cannot aid Plaintiff's cause for at least two reasons.  First, "[m]embers of this Court . . . have consistently held that reply briefs may not inject new grounds and that an argument that was not contained in the main brief is not before the Court." <u>Tyndall v. Maynor</u>, 288 F.R.D. 103, 108 (M.D.N.C. 2013) (internal brackets, ellipses, and quotation marks omitted).  Second, the plain language of Rule 37(e) permits the Court to presume prejudice to Plaintiff from Defendant's deletion of ESI, i.e., to presume that "the lost [ESI]" would have helped Plaintiff because it "was unfavorable to [Defendant]," Fed. R. Civ. P. 37(e)(2)(A), "<u>only upon finding</u> that [Defendant] acted with the <u>intent to deprive</u> [Plaintiff] of the [ESI's] use in th[is] litigation," Fed. R. Civ. P. 37(e)(2) (emphasis added).  As documented previously, the record does not support a "finding that (continued...)

CONCLUSION

The Court should not impose sanctions against Defendant under
Rule 37(e). "This [] recommendation that [Defendant] not be
sanctioned for . . . deleting [Berndt's custodian folders of]
emails should not be viewed as condoning those actions." Snider v.
Danfoss, LLC, No. 15CV4748, 2017 WL 2973464, at *8 (N.D. Ill. July

---

[17](...continued)
[Defendant] acted with the intent to deprive [Plaintiff] of [any]
ESI's use in th[is] litigation," id.  To the extent the case quoted
by Plaintiff would allow a presumption of prejudice in the absence
of such a finding (e.g., based instead on Defendant's "'gross
negligence,'" Ottoson, 268 F. Supp. 3d at 581 (quoting Pension
Comm., 685 F. Supp. 2d at 467 (relying on Residential Funding
Corp.))), the Court should follow instead the plain language of
Rule 37(e).  See United States v. Carter, 429 F. Supp. 3d 788, 870
(D. Kan. 2019) (recognizing that only upon "showing of intent to
deprive [moving] party of [ESI] for use in the litigation" may
courts apply "presumption of prejudice"), vacated in part on other
grounds, No. 16-20032-02, 2020 WL 430739 (D. Kan. Jan. 28, 2020)
(unpublished), appeal filed, No. 20-3038 (10th Cir. Feb. 20, 2020);
Borum v. Brentwood Vill., LLC, 332 F.R.D. 38, 48 (D.D.C. 2019)
("'Rule 37(e)(2) rejects cases such as *Residential Funding Corp.*
that authorize the giving of [Rule 37](e)(2) sanctions [including
presuming the unfavorability of lost ESI to the spoliating party
and thus prejudice to the opposing party] on a finding of
negligence or gross negligence.'" (internal brackets, full case
name, and citation omitted) (quoting Fed. R. Civ. P. 37 advisory
comm. notes, 2015 amend., subdiv. (e)(2))); Tipp v. Adeptus Health
Inc., No. CV16-2317, 2018 WL 447256, at *3 (D. Ariz. Jan. 17, 2018)
(unpublished) ("Although some courts have presumed prejudice upon
a showing of bad faith or gross negligence, . . . better-reasoned
cases . . . require a showing of actual prejudice . . . .")
(rejecting Pension Comm.'s position on presumption of prejudice as
quoted in Ottoson); see also Citibank, N.A. v. Super Sayin' Publ'g,
LLC, No. 14CV5841, 2017 WL 462601, at *2 (S.D.N.Y. Jan. 17, 2017)
(unpublished) ("[C]ourts in this circuit ha[ve] already
acknowledged that the December 1, 2015 amendment to Rule 37 has
been interpreted as overruling the holding in *Residential Funding
Corp.*" (internal quotation marks omitted)), aff'd, 2017 WL 946348
(S.D.N.Y. Mar. 1, 2017) (unpublished); Thurmond v. Bowman, 199
F. Supp. 3d 686, 691 n.5 (W.D.N.Y. 2016) (same).

12, 2017) (unpublished), recommendation adopted, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017) (unpublished). Based on the statement of Defendant's counsel (in conjunction with the assertion of a "work product" objection during the deposition of Defendant's corporate representative) that, "after the May 26th, 2017 [receipt of] Brown['s] letter, which [Defendant] perceive[d as Plaintiff] getting ready for litigation, then at that point [Defendant] w[as] also getting ready for litigation" (Docket Entry 98-1 at 24),[18] Defendant (in the exercise of reasonable care) likely should not have continued to follow its policy of deleting departing employees' e-mail folders, when employees who dealt with Plaintiff (like Berndt) left their jobs with Defendant.

Nonetheless, Rule 37(e) (as amended in 2015) precludes sanctions based on negligent (or even grossly negligent) loss of relevant ESI alone and instead imposes a number of additional requirements for relief, including both proof that any such ESI "cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e), and a finding either "that the [spoliating] party

---

[18] The attempt by Defendant's counsel to avoid the implications of his above-quoted, unequivocal statement (see Docket Entry 108 at 13 n.2 (ignoring words used and their context as material support for objection under work-product doctrine while re-characterizing language at issue as merely stating "valid objection to a deposition question seeking attorney-client privileged information" (emphasis added))) "lacks the candor toward the Court expected of a member of the bar," Essex Builders Grp., Inc. v. Amerisure Ins. Co., No. 6:06CV1562, 2007 WL 2948581, at *2 n.2 (M.D. Fla. Oct. 10, 2007) (unpublished).

acted with the intent to deprive another party of [such ESI's] use in the litigation," Fed. R. Civ. P. 37(e)(2), or that "prejudice [resulted] to another party from loss of [such ESI]," Fed. R. Civ. P. 37(e)(1). "Under the[ record] facts, [no inability to recover or replace relevant ESI, no intent to deprive Plaintiff of the use of such ESI in this action, and] no prejudice has been shown, and consequently, no sanctions are warranted." Snider, 2017 WL 2873464, at *8. However, the record does indicate that portions of Plaintiff's Memorandum in Support of the instant Motion may run afoul of Federal Rule of Civil Procedure 11, thus warranting entry of a show-cause order directed to Plaintiff and its counsel.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 97) be denied.

**IT IS FURTHER RECOMMENDED** that Plaintiff and its counsel be made to show cause why the Court (1) should not "determine[] that [Federal] Rule [of Civil Procedure] 11(b) has been violated," Fed. R. Civ. P. 11(c)(1), and (2) should not "impose an appropriate sanction on [Plaintiff's] attorney, [his] law firm, [and/]or [Plaintiff]," id., because Plaintiff (through its counsel) filed the Memorandum in Support asserting that (A) Defendant "permanently erased all files stored in the email folders belong [sic] to [] Richkowski" (Docket Entry 98 at 4 (emphasis added)), (B) "the email folders of . . . Richkowski have been entirely lost" (id. at 10 (emphasis added)), (C) "Defendant caused the wholesale deletion of

-30-

the email folders of . . . Richkowski" (<u>id.</u> at 11 (emphasis added)), and (D) "<u>all</u> of the contents within the email folders of . . . Richkowski had been <u>entirely</u> . . . deleted" (<u>id.</u> at 12-13 (emphasis added)), when the record reflects Plaintiff (and its counsel) then possessed proof that conclusively contradicted those assertions (<u>see</u> Docket Entry 108 at 5-6 (citing Docket Entry 108-1, ¶ 60, and Docket Entry 108-4, ¶ 16)).

**IT IS FURTHER RECOMMENDED** that Plaintiff and its counsel be made to show cause why the Court (1) should not "determine[] that [Federal] Rule [of Civil Procedure] 11(b) has been violated," Fed. R. Civ. P. 11(c)(1), and (2) should not "impose an appropriate sanction on [Plaintiff's] attorney, [his] law firm, [and/]or [Plaintiff]," <u>id.</u>, because Plaintiff (through its counsel) filed the Memorandum in Support asserting (without citing any record support) that "[i]t is not unreasonable to suspect that the termination of [] Berndt's employment with Defendant may have been in some way related to the pertinent facts of the present case" (Docket Entry 98 at 17), despite uncontested record evidence that Berndt previously "specifically told [Plaintiff's counsel] that [Berndt] resigned from [Defendant] on good terms and that [he] left [its] employment due to [a] family medical issue with [his] daughter" (Docket Entry 108-2, ¶ 20).

    /s/ L. Patrick Auld    
**L. Patrick Auld**
**United States Magistrate Judge**

December 4, 2020

-31-
